# EXHIBIT 13

To

Memorandum In Support of TriPath Imaging, Inc.'s Motion to Exclude
Defenses Based on Cytyc's CDS-1000

Civil Action No. 03-11142 [DPW]  - Lead Case

Filed May 5, 2005

Westlaw.

Not Reported in F.Supp.2d                                         Page 1
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
ABBOTT LABORATORIES, an Illinois corporation,
Plaintiff,
v.
SYNTRON BIORESEARCH, INC., a California
corporation, Defendant.
**No. 98-CV-2359 H(POR).**

Aug. 24, 2001.

Order Adopting Report and Recommendation;
Granting in Part, Denying in Part
Abbott's Motion to Exclude Evidence: Excluding
Nine Newly Disclosed Prior Art
References; Not Excluding Five Other Prior Art
References; Not Excluding Issues
of Inequitable Conduct and Inventorship

HUFF, Chief J.

*1 AND RELATED CROSS-ACTIONS.

On July 2, 2001, Plaintiff Abbott Laboratories filed a motion to exclude Defendant Syntron Bioresearch, Inc.'s untimely prior art references of validity and untimely issues of inequitable conduct and inventorship. The Court referred the motion to Magistrate Judge Louisa S. Porter on a report and recommendation basis. Syntron filed its opposition on July 11, 2001. On July 16, 2001, Abbott filed a reply. Judge Porter held telephonic oral arguments on July 20, 2001.

On August 3, 2001, Judge Porter issued a Report and Recommendation, recommending that the motion to exclude evidence be granted in part and denied in part. On August 10, 2001, both parties submitted objections to the Report and Recommendation and on August 17, 2001, the parties both submitted replies to the objections.

I. Procedural Background
On December 30, 1998, Abbott filed a Complaint alleging patent infringement. On February 22, 1999,

Syntron filed an Answer with Counterclaims seeking declaratory judgment that it did not infringe Abbott's patents and that Abbott's patents are invalid and unenforceable. After a case management conference, the Court issued a scheduling order on May 13, 1999. Pursuant to the scheduling order, all fact discovery was to be completed by February 28, 2000, and the final date to conduct depositions of experts was to be April 14, 2000. On March 21, 2000, this Court extended the final date to conduct expert discovery to April 28, 2000.

Summary judgment motions, *Markman* hearings on the construction of claims and motions for reconsideration were heard between Spring 2000 through Spring 2001. On July 31, 2000, the parties filed their Memoranda of Contentions of Facts and Law. A proposed Pretrial Order was submitted on August 28, 2000.

On May 24, 2001, Syntron filed a Notice of Prior Art pursuant to 35 U.S.C. § 282. On June 7, 2001, the parties submitted a revised Memoranda of Contentions of Facts and Law. A pretrial conference was held on June 22, 2001 and a Pretrial Order was filed on the same day. On June 27, 2001, the Court issued a scheduling order setting trial to begin on September 11, 2001.

On June 25, 2001, the Court issued an Order Referring Issues in Pretrial Order to Magistrate Judge for Report and Recommendation. [FN1] Specifically, the Court asked Magistrate Judge Porter to address 1) the requirements of whether the prior art should have been disclosed in discovery or expert reports; 2) whether the inventorship issue should have been disclosed in discovery or expert reports; 3) if there was any violation of proper discovery procedures; 4) and if Abbott was prejudiced by the lack of disclosure.

FN1. The items in dispute are indicated by asterisks next to the paragraph number in the Pretrial Order.

II. Analysis
A. Prior Art References (paragraphs 36-44 of the Pretrial Order)

Paragraphs 36-44 of the Pretrial Order set forth nine prior art references (Weiss, Schuurs, Guire, Renn, Maggio, Litman I, Neuhäusser) that were not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Page 2

disclosed by Syntron until May 24, 2001, more than a year after discovery had closed.

**\*2** Between April 28, 2000 (the close of expert discovery) and May 24, 2001, Syntron never filed a supplemental disclosure or response. *See* Fed.R.Civ.P. 26(e)(1) & (2). Syntron argues that Abbott is not prejudiced by the new disclosures because it knew about these references based on previous litigation or prosecution of the patents-in-suit. However, Abbott did not have knowledge that these prior arts would be an issue in this particular case. In addition, there has been no expert discovery conducted on these references.

"The purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Whittaker Corp. v. Execuair Corp.,* 736 F.2d 1341, 1347 (9th Cir.1984) (citations omitted). Federal Rules of Civil Procedure 26(e)(1) and (2) establish a duty to supplement or correct discovery. If a party fails to supplement disclosures or responses, the court may issue sanctions pursuant to Fed.R.Civ.P. 37(c)(1):

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed ...

In cases involving patent invalidity or infringement notice of prior art references is also governed by 35 U.S.C. § 282, which provides:

> In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit ...

35 U.S.C.A. § 282 (West Supp.2000). The Federal Rules of Civil Procedure and § 282 co-exist. *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 551 (Fed.Cir.1998); *Eaton Corp. v. Appliance Valves Corp.,* 190 F.2d 874, 879 (Fed.Cir.1986). Section 282 sets a minimum period for identification of prior art; however, "when the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial." *ATD Corp.,* 159 F.3d at 551 (excluding prior art because defendant presented no reason to justify inclusion of prior art

that was presented four months after extended discovery ended and one month before a first rescheduled pretrial conference). The purpose of both the Federal Rules and § 282 is to prevent unfair and prejudicial surprise. *Id.*

Magistrate Judge Porter found that Syntron failed to present any "substantial justification" for its delay in presenting the prior art references. *See* Fed.R.Civ.P. 37(c)(1); Scheduling Regulating Discovery and Other Pretrial Proceedings, May 13, 1999. Based on the prejudice suffered by Abbott, Judge Porter recommended that the Court exclude all reference to the nine prior art references in paragraphs 36-44 of the Pretrial Order.

**\*3** Syntron objects to this portion of the Report and Recommendation. Syntron disagrees with the exclusion of any of the nine references, but focuses its Objection to three prior art references: the Takeda article; the Alfa Laval AB patent; and the Litman I patent. [FN2] Syntron argues that Abbott is not prejudiced by having to respond to the Takeda and Alfa Laval AB references because it has know about them since 1999 and 1986, respectively, when they were cited against Abbott in its foreign prosecution of these patents. Syntron also argues that Abbott is not prejudiced by having to respond to Litman I because the relevant portions of Litman I are identical to Litman III, which was discussed in the report by Attorney Hoscheit, Syntron's patent law expert. However, Litman III is not disclosed in the Pretrial Order and thus not within scope of trial.

> FN2. In Syntron's Reply to Abbott's Objections to the Report and Recommendation, Syntron stated that it was willing to forego all the disputed prior art references, including those allowed by Judge Porter, in favor of the introduction of the Takeda, Alfa Laval AB, and Litman I references.

Syntron fails to offer any reason why these prior art references were not disclosed earlier. Syntron states that it disclosed the references as soon as it discovered them in May, 2001, however, all of the references were available to Syntron two years ago, during the discovery phase of this case. In March 2000, Dr. David, Syntron's expert, opined that the '484 and '162 patents are invalid on various grounds and cited five prior art references. Dr. David did not identify Takeda, Litman, or Alfa Laval.

Abbott has not conducted expert discovery on the

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

nine newly disclosed references. Syntron states that Dr. David is available for a deposition at Abbott's convenience. However, leave of court is required to conduct additional depositions at this stage in the litigation. Fed.R.Civ.P. 30(a)(2)(C); Fed.R.Civ.P. 29. The Magistrate Judge concluded that Abbott is prejudiced by the lack of expert discovery and recommended that the nine reference be excluded. The Court ADOPTS the Report and Recommendation and excludes the nine prior art references listed in paragraphs 36-44 of the Pretrial Order.

B. New Applications (paragraphs 45-56 of the Pretrial Order)

Paragraphs 45-56 of the Pretrial Order list sixteen different prior art references, alone or in combination, as invalidating the patents-in-suit. As discussed above, the nine new prior art references are excluded from trial. Abbott argues that five other prior art references (Deutsche II, Brown, Litman II, Bauman, Kelton) mentioned in paragraphs 45-56 should also be excluded. Abbott contends that these references were not properly identified in discovery and that it will be prejudiced if Syntron is allowed to raise these reference at trial. In opposition, Syntron contends that these issues are not new applications but were included in Syntron's original Memorandum of Contentions of Facts and Law filed on July 31, 2000 and in the previous Pretrial Order filed in August 2000. It further argues that prior art reference, like any other piece of evidence, once admitted, is admissible for any purpose for which it is relevant.

Judge Porter recommended that the five prior art references not be excluded. Judge Porter found that the Brown and Deutsche II patents were listed as prior art references in Syntron's responses to interrogatories and the Deutsche II, Brown, and Kelton patents were stipulated to as prior art in the Pretrial Order filed June 22, 2001. Judge Porter concluded that "[a]lthough the patents were not specifically mentioned as 'invalidating prior art,' Abbott had notice that these prior art references may be used to invalidate the patents-in-issue." Report and Recommendation at 7. Judge Porter also found that the combinations of Tom, Deutsche (I or II), Bauman, Grubb, Giegel and Glad were in the proposed Pretrial Order dated August 21, 2000. Judge Porter concluded that although Abbott may suffer prejudice by allowing these references, the prejudice was created by Abbott's failure to file a motion either to exclude or re-open discovery a year ago.

*4 Abbott objects to this recommendation. Abbott argues that the five references and new uses of previously identified prior art should be excluded because Syntron did not identify them as invalidating prior art during the scheduled discovery period. Specifically, Abbott argues that Dr. David never opined that any of the five references (Deutsche II, Litman II, Kelton, Bauman, Brown) invalidated the asserted claims of the patents-in-suit. Abbott further contends that: (1) Syntron failed to identify three of the references in response to its interrogatory requesting identification of prior art; (2) Mr. Hoscheit, Syntron's patent law expert, stated that Syntron was not relying on Bauman as an invalidating reference; and (3) neither Dr. David nor Mr. Hoscheit ever opined on the Brown reference.

Abbott contends that the Report and Recommendation allowing the five references is based on three misconceptions of the facts. Abbott first asserts that just because it stipulated that the references are prior art does not mean that it admits they can be asserted at trial. Abbott specifically reserved this objection in the Pretrial Order. See Pretrial Order at p. 7, ¶ 2 ("[b]y admitting [the references] are prior art to the patents-in-suit, Abbott does not admit that Syntron may assert them at trial because it has not previously identified them as invalidating art"). Second, Abbott contends that although Rule 26 is not incorporated by name in the Scheduling Order, its substance is incorporated. See Scheduling Order ("Opinions and reasons for opinions not disclosed during depositions or in reports are subject to exclusion absent substantial justification"). Finally, Abbott asserts that it was improper for Syntron to raise the new applications and combinations or prior art in the July 31, 2000 Memorandum of Contentions of Fact and Law. Abbott contends that it preserved its objection to the new applications and combinations in the original proposed Pretrial Order. See Pretrial Order, August 2000, p. 13, ¶ 35.

Syntron replies that the five references Abbott contests were not referred to the Magistrate Judge for a report and recommendation. Syntron points out that these five references were listed in the Pretrial Order as stipulated facts. Syntron contends that Abbott has known about these references for a year and has failed to object or cite authority for its position that previously disclosed references can not be used in new combinations. Syntron claims that any alleged prejudice suffered by Abbott could be cured with a supplemental deposition of Dr. David. Syntron states that it is not seeking to depose Abbott's expert, Dr.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Page 4

Harlow, about these references.

The Court ADOPTS the Report and Recommendation and will not exclude the five references from trial. Abbott had notice that these references were prior art to the patents-in-suit and will not be prejudiced having to defend against them to an extent which would require excluding them from trial. However, the Court reserves the right to limit testimony about the five references in accordance with the Federal Rules of Evidence during the course of the trial.

C. Inequitable Conduct Defense (paragraphs 60, 62-65, & 66 of the Pretrial Order)

1. Paragraphs 60 and 62

*5 Paragraphs 60 and 62 of the Pretrial Order make general allegations of inequitable conduct by Abbott. Abbott argues that the inequitable conduct issue was never raised in pleadings or discovery. Furthermore, it claims that the inequitable conduct claim was not based on Abbott's conduct but that of the "applicants." Abbott states that although it assisted in the prosecution of the patents, the inventors took primary responsibility in the prosecution. Lastly, Abbott contends that it will be prejudiced because this issue was not raised in expert reports.

Magistrate Judge Porter determined that Syntron raised the "inequitable conduct" issue when it filed its answer with counterclaims. Syntron's Sixth Affirmative Defense states "Abbott is estopped from asserting that Syntron has infringed the 484 patent or the 162 patent by reason of actions taken and statements made by the applicant to the Patent Office during prosecution of the application which led to the 484 and 162 patents." This statement is broad as it relates to Abbott's conduct. In the Seventh Affirmative Defense, Syntron alleges inequitable conduct by the "applicant." Therefore, inequitable conduct, in paragraphs 60 and 62 with regards to both patents-in-issue, was alleged early in the litigation. Inequitable conduct was also raised in interrogatories.

The Court also notes that the inequitable conduct issue was raised in the prior pretrial order filed August 21, 2000. Abbott had notice of these issues since last year and at no time contacted the Court to re-open discovery on these issues. By virtue of the answer with affirmative defenses and reference to same in interrogatory answers, Abbott had notice and full opportunity to explore the issue during the scheduled discovery time. Judge Porter concluded

that the inequitable conduct issue was raised in discovery and recommended that the issue not be excluded. The Court ADOPTS the Recommendation with respect to the general allegations of inequitable conduct found in paragraphs 60 and 62 of the Pretrial Order.

However, Judge Porter also recommended if expert testimony is required on this issue of inequitable conduct, then the issue should be excluded based on prejudice against Abbott. [FN3] It appears from Syntron's papers that the only specific inequitable conduct issues are those listed in paragraphs 63-66.

> FN3. At oral argument, Syntron stated that expert testimony would be helpful, but it would not be required, while Abbott asserted that expert testimony is needed. At no time did Syntron's expert, in reports or during deposition testimony, raise the specific issue of inequitable conduct.

2. Paragraphs 63-65

Paragraphs 63-65 set forth inequitable conduct allegations for failure to disclose certain reference to the patent examiner and or the PTO during prosecution of the '484 or '162 patents. Paragraph 63 discusses inequitable conduct as it relates to the newly disclosed prior art. As set forth above, these references are excluded from trial. Consequently, the allegations in paragraph 63 are excluded from trial.

In paragraphs 64 and 65, Syntron alleges an inequitable conduct defense based on Abbott's failure to point out the asserted patentable novelty over Deutsche I, Bauman, Grubb, Giegel, Litman II, Tom, or Hochstrasser.

*6 Abbott argues that Syntron will need to support its inequitable conduce defenses with expert testimony. Abbott relies on *Life Technologies, Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1325 (Fed.Cir.2000), for its assertion that expert testimony is required on the issue of materiality in the inequitable conduct inquiry. In *Life Technologies,* the Federal Circuit explained what "material" means in the context of an inequitable conduct challenge:
Information is material when there is a substantial likelihood that a reasonable Examiner would have considered the information important in deciding whether to allow the application to issue as a patent. Because patentability is assessed from the perspective of the hypothetical person of ordinary skill in the art, information regarding the subjective

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

motivations of inventors is not material. *Life Technologies,* 224 F.3d at 1325 (citations omitted). The *Life Technologies* Court did not state that expert testimony was need to prove materiality. However, an expert is needed to voice the understanding of a hypothetical person of ordinary skill in the art.

Syntron's expert, Dr. David, has opined that Grubb, Deutsche I, Tom, Hochstrasser, and Giegel patents, and Glad article invalidate the patents-in-suit. In addition, Mr. Hoscheit has opined that the patentee breached its duty of candor to the Patent Office by failing to submit Hochstrasser and Litman III to the Patent Office. While they didn't render an opinion specifically addressing inequitable conduct, the testimony of Dr. David and Mr. Hoscheit establishes the materiality of most of these references relevant to Syntron's inequitable conduct defense. Potentially invalidating references are material and there is a substantial likelihood that a reasonable Examiner would have considered the information important in decided whether to allow the application to issue as a patent. However, it does not appear that any showing of materiality has been made with respect to the Bauman and Litman II references.

At this time, the Court ADOPTS the Report and Recommendation. The Court will not exclude Syntron's inequitable conduce defense from trial, however, Syntron must make a proper showing of materiality before the evidence can be admitted. Based on the scope of the expert reports, the Court does not see how Syntron can raise the Bauman or Litman II references. Nevertheless, the Court reserves final judgment for trial when the Court is in a better position to evaluate the issue.

### 3. Paragraph 66

Paragraph 66 alleges inequitable conduct based on concealing the correct inventorship from the PTO with deceptive intent. For the reasons set forth in Section D below, the Court will not exclude this defense from trial but the necessary evidentiary proof must be made before evidence of inequitable conduct based on inventorship will be presented to the jury.

### D. Inventorship (paragraph 69 of the Pretrial Order)

Abbott contends that Syntron failed to properly raise the inventorship issue as an affirmative defense, failed to disclose any evidence of alleged incorrect inventorship during discovery and failed to identify the allegedly correct inventors or facts supporting

that contention. Abbott also argues that it will be prejudiced since there was no expert testimony about inventorship. In opposition, Syntron argues that it has continually preserved the inventorship issue in its pleadings and in discovery. Moreover, Syntron argues that Abbott has known about the inventorship issue for at least six years when it was brought up as a defense in another lawsuit. Also, Syntron learned about the inventorship issue through Abbott when Abbott produced a memorandum by Dr. Brian Lee about why he should have been named as a co-inventor during deposition in another lawsuit. However, both parties stated that expert testimony was not conducted on this issue.

**\*7** The Report and Recommendation concludes that the inventorship issue was adequately disclosed during discovery and recommended that it not be excluded. However, Judge Porter did note that if expert testimony was required on the issue then the Court recommends that the issue be excluded based upon prejudice against Abbott.

Abbott argues that expert testimony is required for Syntron to meet its burden to prove inventorship issues by clear and convincing evidence. *See Environ Prods. v. Furon Co.,* 215 F.3d 1261, 1265 (Fed.Cir.2000) (a party challenging patent validity for omission of an inventor must present clear and convincing evidence that the omitted individual actually invented the claimed invention). Abbott relies on *Acromed Corp. V. Sofamor Danek Group, Inc.,* 253 F.3d 1371, 1378-1381 (Fed.Cir.2001) to support its contention that expert testimony is required. While the *Acromed* Court makes clear that Syntron has the burden of proving that the omitted co-inventor's contribution was more than just the normal contributions of one of ordinary skill in the art, the case does not hold that this evidence must be presented through expert testimony. The *Acromed* Court noted that the defendant "could have countered this by producing testimony at trial concerning what would or would not be obvious to one ordinarily skilled in the art ... [the defendant] never did." *Acromed,* 253 F.3d at 1380.

Syntron has not offered expert testimony on the inventorship issue. However, Abbott has failed to present any case law that establishes that expert testimony is required. The Court is unclear how Syntron will meet its burden to prove the inventorship issues it raises by clear and convincing evidence, however, the Court will not exclude the issue at this time. The Court ADOPTS the Report and Recommendation. However, the Court reserves final

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

judgment on the inventorship issue until trial.

### III. Conclusion

For the reasons set forth above, the Court ADOPTS the Report and Recommendation RE: Plaintiff's Motion to Exclude Evidence. The recently disclosed prior art references found in paragraphs 56 of the pretrial order are excluded without prejudice. The remaining prior art references are not excluded. Inequitable conduct and inventorship issues are not excluded at this time but will be limited at trial if Syntron fails to meet its evidentiary burden.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE

PORTER, Magistrate J.

[Document No. 241]
And related cross-claims

On July 2, 2001, Plaintiff Abbott Laboratories filed a motion to exclude Defendant Syntron Bioresearch, Inc.'s untimely prior art references of validity and untimely issues of inequitable conduct and inventorship. Syntron filed its opposition on July 11, 2001. On July 16, 2001, Abbott filed a reply. Oral arguments were heard telephonically on July 20, 2001.

This matter has been referred to Magistrate Judge Louisa S. Porter on a report and recommendation basis from District Judge Marilyn L. Huff. Based on the foregoing, this Court recommends that Plaintiff's motion be GRANTED in part and DENIED in part.

*I. Procedural Background*

**\*8** On December 30, 1998, Abbott filed a Complaint alleging patent infringement. On February 22, 1999, Syntron filed an Answer with Counterclaims seeking declaratory judgment that it did not infringe Abbott's patents and that Abbott's patents are invalid and unenforceable. After a case management conference, this Court issued a scheduling order on May 13, 1999. Pursuant to the scheduling order, all fact discovery was to be completed by February 28, 2000, and the final date to conduct depositions of experts was to be April 14, 2000. On March 21, 2000, this Court extended the final date to conduct expert discovery to April 28, 2000.

Summary judgment motions, *Markman* hearings on the construction of claims and motions for reconsideration were heard between Spring 2000 through Spring 2001. On July 31, 2000, the parties filed their Memoranda of Contentions of Facts and Law. A Pretrial Order was filed on August 28, 2000.

On May 24, 2001, Syntron filed a Notice of Prior Art pursuant to 35 U.S.C. § 282. On June 7, 2001, the parties submitted a revised Memoranda of Contentions of Facts and Law. A pretrial conference was held on June 22, 2001 and a Pretrial Order was filed on the same day. On June 27, 2001, Judge Huff issued a scheduling order setting trial to begin on September 11, 2001.

On June 25, 2001, Judge Huff issued an Order Referring Issues in Pretrial Order to Magistrate Judge for Report and Recommendation. [FN1] Specifically, Judge Huff wanted this Court to address 1) the requirements of whether the prior art should have been disclosed in discovery or expert reports; 2) whether the inventorship issue should have been disclosed in discovery or expert reports; 3) if there was any violation of proper discovery procedures; 4) and if Abbott was prejudiced by the lack of disclosure.

> FN1. The items in dispute are indicated by asterisks next to the paragraph number.

*II. Analysis*

A. Prior Art References (paragraphs 36-44 of the Pretrial Order) [FN2]

> FN2. Abbott claims that there are fourteen prior art references at issue. Syntron argues that only nine are at issue and the additional five are stipulated facts in the Pretrial Order. District Judge Huff referred certain disputed issues in the pretrial order, specifically, paragraphs 36- 44. Therefore, this Court will only address the nine prior art references contained in paragraphs 36-44.

The federal rules of discovery are designed to give parties knowledge of all relevant facts before going to trial in order to prevent surprise. *Shelak v. White Motor Co., 581 F.2d 1155, 1159 (5th Cir.1978)* (citing *Hickman v. Taylor, 329 U.S. 495 (1947)*). "The purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Whittaker Corp. v.*

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Page 7

*Execuair Corp.,* 736 F.2d 1341, 1347 (9th Cir.1984) (citations omitted). Notwithstanding the discovery cut-off date, Fed.R.Civ.P. 26(e)(1) and (2) establishes a duty to supplement or correct discovery and provides:

(e) Supplementation of Disclosures and Responses. A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired ... in the following circumstances:

(1) A party is under a duty to supplement *at appropriate intervals* its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

**\*9** (2) A party is under a duty *seasonably* to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. (emphasis added).

Fed.R.Civ.P. 26(e)(1) & (2). The duty to supplement does not have to occur each time new information is learned but "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed.R.Civ.P. 26(e) (Committee Notes on Amendments (1993)).

If a party fails to supplement disclosures or responses, the court may issue sanctions pursuant to Fed.R.Civ.P. 37(c)(1):

A party that without *substantial justification* fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is *harmless,* permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed ... (emphasis added).

Fed.R.Civ.P. 37(c)(1). "A failure to disclose in a timely manner is equivalent to a failure to disclose."

*Transclean Corp. v. Bridgewood Servs., Inc.,* 101 F.Supp.2d 788, 795 (D.Minn.2000). Since exclusion of evidence is a harsh sanction, the court must look to whether there was substantial justification for nondisclosure or whether the failure was harmless. *Id.*

Notice of prior art pursuant to 35 U.S.C. § 282 provides:

In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit ...

35 U.S.C.A. § 282 (West Supp.2000). The Federal Rules of Civil Procedure and § 282 co-exist. *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 551 (Fed.Cir.1998); *Eaton Corp. v. Appliance Valves Corp.,* 190 F.2d 874, 879 (Fed.Cir.1986). Section 282 sets a minimum period for identification of prior art; however, "when the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial." *ATD Corp.,* 159 F.3d at 551 (excluding prior art because defendant presented no reason to justify inclusion of prior art that was presented four months after extended discovery ended and one month before a first rescheduled pretrial conference). The purpose of both the Federal Rules and § 282 is to prevent unfair and prejudicial surprise. *Id.* In *Eaton Corp.,* the Federal Circuit admitted prior art references that were submitted less than thirty days before trial began. *Eaton Corp.,* 190 F.2d at 879. The court explained that plaintiff was not prejudiced or surprised because the prior art references were provided to plaintiff in depositions, the plaintiff should have known about the prior art because it had been a competitor in the market for over 10 years, and the alleged inventor was familiar with the prior art. *Id.* at 880. As a result, plaintiff was able to adequately respond to the prior art. *Id.*

**\*10** Abbott contends that the nine prior art references were never revealed until May 24, 2001, on the "eve of trial." It argues that expert discovery ended on April 28, 2000 and that it will be severely prejudiced since it was unable to conduct expert discovery. In opposition, Syntron argues that it disclosed the references right after discovering them in April/May 2001. Syntron contends that Abbott will not be prejudiced since it was fully aware of all these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

prior art references through other litigation. Further, it asserts that prejudice to Abbott can be cured by giving it the opportunity to depose the experts on the prior art. [FN3]

> FN3. Syntron assumes that additional expert discovery can readily be conducted. However, leave of court will be required to conduct additional depositions. Fed.R.Civ.P. 30(a)(2)(C) & Fed.R.Civ.P. 29.

Fact discovery ended on February 28, 2000 and expert discovery was extended to April 28, 2000. Syntron filed its Notice of Prior Art on May 24, 2001, revealing nine new prior art references, over one year after discovery ended. Between April 28, 2000 and May 24, 2001, Syntron never filed a supplemental disclosure or response. Most of the nine prior art references were issued in the 1970's and 1980's and Syntron does not explain why these references were not revealed earlier. No expert discovery was conducted on these references. [FN4] Syntron only argues that Abbott will not be prejudiced because it knew about the references based on previous litigation or prosecution. However, Abbott did not have knowledge that these prior arts would be an issue in this particular case. Although Syntron argues that it complied with section 282 and promptly disclosed the prior arts after discovering them, Syntron does not present any "substantial justification" for its delay in presenting the prior art references.

> FN4. On July 23, 2001, a day after the motion hearing, Syntron submitted a Post-Hearing Submission of Supplemental Expert Report that was served upon Abbott. On July 24, 2001, Abbott filed a response to Syntron's Post-Hearing Submission. Since the Post-Hearing Submission of Supplemental Expert Report was not provided for in the scheduling order, it was not considered by this Court in this report and recommendation.

The patents-in-issue are complex. Expert discovery was conducted. There will be expert testimony on prior art references at trial. (*See* Pretrial Order at 17-19.) The newly revealed prior art references were not mentioned in discovery and Abbott had no opportunity to conduct expert discovery on these prior arts. Since no expert discovery has been conducted, Abbott will be prejudiced if these prior art references are admitted at trial. Based upon the prejudice suffered by Abbott, it is recommended that the

Court exclude, at time of trial, all reference to these nine prior arts listed in the Pretrial Order in paragraphs 36-44. The only way to avoid this prejudice to Abbott is to continue the trial and re-open discovery to allow expert discovery on these limited issues.

B. New Applications (paragraphs 45-56 of the Pretrial Order)

Abbott argues that Syntron attempts to assert previously disclosed prior art references in new combinations and new ways that were never disclosed before in expert reports. It also argues that Syntron improperly raised the nine prior art references in these new combinations. In opposition, Syntron contends that these issues are not new applications but were included in Syntron's original Memorandum of Contentions of Facts and Law filed on July 31, 2000 and in the previous Pretrial Order filed in August 2000. It further argues that prior art reference, like any other piece of evidence, once admitted, is admissible for any purpose for which it is relevant.

*11 Expert disclosure under Rule 26 does not apply in this case because the Scheduling Order dated May 13, 1999, did not provide for it. Therefore, merely failing to disclose expert opinion on certain issues would not preclude testimony at trial. This Court focuses on the prejudice issue. Here, many of the new applications under paragraphs 45-56 were previously mentioned either in the prior Pretrial Order or Syntron's previous Memorandum of Contentions of Fact and Law. Therefore, Abbott was aware of these issues in August 2000 and had an opportunity to affirmatively act and failed to do so. For example, Abbott could have moved for leave to re-open discovery, or could have brought a motion before the Court regarding exclusion of disputed issues. Certain applications were disclosed in the previous Pretrial Order and/or Syntron's prior Memorandum of Contentions of Facts and Law while others were not. This Court will analyze the notice issue as relates to each of the applications at issue:
1. Paragraph 45--Whether Claims 22, 23 and/or 26 of the '484 patent are invalid as anticipated by the Weiss, Guire, Renn, Deutsch I, Grubb, Deutsch II, Litman I, Brown, Tom, Bauman, Giegel, Kelton, Neuhausser and Alfa Laval AB patents and patent applications, the Glad and Takeda articles, and/or the remaining references listed in the attached Exhibit List.

As discussed above, the Court recommends that the

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Page 9

recently disclosed prior art references of Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article be excluded. Based upon prior notice, it is recommended that the Deutsch I, Grubb, Tom, Bauman, Giegel patents and the Glad article not be excluded. [FN5] Based upon the Court's review of the presented documents, the Brown and Deutsch II patents are listed as prior art references in Syntron's revised responses to interrogatories, (Abbott's Second Lodgment, Ex. 1 at 5), and the Deutsch II, Brown and Kelton patents are listed as Stipulated Facts in the Pretrial Order filed June 22, 2001, (Pretrial Order ¶¶ 16, 17 & 22). Although the patents were not specifically mentioned as "invalidating prior art," Abbott had notice that these prior art references may be used to invalidate the patents-in-issue. Accordingly, this Court recommends that the Brown, Deutsch II and Kelton patents not be excluded.

> FN5. The Grubb, Deutsch I and Tom patents are mentioned in the expert report of Dr. Gary S. David. (Abbott's Second Lodgment, Ex. 2 ¶¶ 60, 63, & 64.) The Bauman and Giegel patents and the Glad article are discussed in Syntron's previous Memorandum of Contentions of Fact and Law, dated August 1, 2000. (Syntron's Lodgment, Ex. 11 ¶¶ 109, 114, & 117). The Deutsch I, Bauman, Grubb, Giegel patents and the Glad article are also mentioned in the previous Pretrial Order, dated August 21, 2000. (Abbott's Lodgment, Ex. J ¶ 26.)

2. Paragraph 46. Whether Claims 22, 23, and/or 26 of the '484 patent are invalid as rendered obvious by the Weiss, Guire, Renn, Deutsch I, Grubb, Deutsch II, Litman I, Brown, Tom, Bauman, Giegel, Kelton, Neuhausser and Alfa Laval AB patents and patent applications, the Glad and Takeda articles, and/or the remaining references listed in the attached Exhibit List, whether alone or in combination.

As discussed above, this Court recommends that the newly disclosed prior arts of Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article be excluded. Based upon prior notice, Deutsch I, Grubb, Tom, Bauman, Giegel, and the Glad article should not be excluded. [FN6] As discussed previously, the Brown and Deutsch II patents were listed as prior art references in Syntron's revised responses to interrogatories. (Abbott's Second Lodgment, Ex. 1 at 5.) Moreover, the Deutsch II,

Brown and Kelton patents are listed as Stipulated Facts of the Pretrial Order filed June 22, 2001. (Pretrial Order ¶¶ 16, 17 & 22.) Therefore, based upon prior knowledge, the Deutsch II, Brown and Kelton patents should not be excluded.

> FN6. The Tom, Grubb, Bauman, Deutsch I, Giegal patents and the Glad article are mentioned in Syntron's prior Memorandum of Contentions of Fact and Law filed August 1, 2000. (Syntron's Lodgments, Ex. 11 ¶¶ 108, 112, 113, 115, 116 & 118.)

*12 3. Paragraph 47. Whether, to one of ordinary skill in the art, Claims 22, 23 and 26 of the '484 patent were rendered obvious by the following combinations of references: (a) Deutsch (I or II) in view of Tom; (b) Grubb in view of Deutsch (I or II) and/or Bauman; (c) the Glad article in view of Deutsch (I or II) or Bauman; or (d) Giegel in view of Deutsch (I or II) or Bauman.
Paragraph 48. Whether Claim 1 of the '162 patent was anticipated by the Deutsch (I or II), Bauman, Grubb, Giegel, Giegel, Litman I, Tom, Neuhausser and Alfa Laval AB patents and patent applications, the Glad article, and/or remaining references listed in the attached Exhibit List.
Paragraph 50. Whether, to one of ordinary skill in the art, Claim 1 of the '162 patent was rendered obvious by the following combination of references: (a) Deutsch (I or II) in view of Tom; (b) Deutsch (I or II) in view of Tom and/or Bauman; (c) Grubb in view of Bauman and/or Deutsch (I or II); or (d) Glad in view of Bauman.
Paragraph 51. Whether, to one of ordinary skill in the art, Claim 1 of the '162 patent was made obvious by Giegel in view of Grubb.
Paragraph 52. [FN7] Whether Claims 22, 29 and 30 of the '162 patent are anticipated by the Deutsch (I or II), Litman I, Giegel patents and/or the remaining references listed in the attached Exhibit List.

> FN7. The Court notes that Claim 22 of patent '162 in paragraphs 52 and 54 is not mentioned in the prior pretrial order. It appears that the omission is the result of a typographical error since this claim was stated in Syntron's prior Memorandum of Contentions of Fact and Law.

Paragraph 54. Whether, to one of ordinary skill in the art, Claims 22, 29 and 30 of the '162 patent were rendered obvious by Deutsch I in view of Tom and/or Bauman.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Except for the new prior art references (Litman I, Neuhausser, Alfa Laval AB) in paragraph 48 that should be excluded, these applications were in the Pretrial Order dated August 21, 2000. (Abbott's Lodgments, Ex. J at 72-73.) At the time, Abbott objected to these paragraphs, (id. at 73); however, for almost one year, Abbott never made an attempt to file a motion, either to re-open discovery or to exclude. This Court finds that Abbott had notice of these issues as of August 21, 2000 and failed to act upon them even though a Magistrate Judge was assigned for purposes of pretrial discovery and scheduling. Therefore, although Abbott may suffer prejudice, that state was contributed to by Abbott's failure to act. It is recommended that the issues set forth in these paragraphs, except for the Litman I, Neuhausser and Alfa Laval AB patents, not be excluded. The Court further recommends that the Litman I, Neuhausser and Alfa Laval AB patents be excluded.

4. Paragraph 49. Whether Claim 1 of the '162 patent is invalid as rendered obvious by the Deutsch (I or II), Bauman, Grubb, Glad, Giegel, Litman I, Tom, Neuhausser and Alfa Laval AB patents and patent applications, the Glad article, and/or the remaining references listed in the attached Exhibit list, whether alone or in combination.

As discussed above, the recently disclosed prior art references of Litman I, Neuhausser and Alfa Laval AB patents should be excluded. The Bauman, Grubb, Glad, Giegel, and Tom patents are not cited as invalidating the patents-in-issue based on obviousness in the previous pretrial order, Syntron's previous Memorandum of Contentions of Fact and Law or the expert report as it relates to the '162 patent. However, they were listed as prior art references that may be used to invalidate the patents-in suit in Syntron's revised responses to interrogatories. (Abbott's Second Lodgment, Ex. 1 at 5.) Even though Syntron did not specify under which theory it would proceed to use the prior art references, Abbott had notice that Syntron might rely on these prior arts to demonstrate invalidity, whether it be based on anticipation or obviousness. Consequently, this Court recommends that these references not be excluded. Lastly, it appears that Deutsch (I or II) was mentioned in the expert report, (Abbott's Second Lodgment, Ex. 2 ¶ 83), and this Court recommends that it also not be excluded.

*13 5. Paragraph 53. Whether Claims 22, 29 and 30 of the '162 patent are rendered obvious by Deutsch (I or II), Litman I, Giegel, Neuhausser and Alfa Laval AB patents and patent applications

and/or the remaining references listed in the attached Exhibit List, whether alone or in combination.

As discussed above, the recently disclosed prior art references of Litman I, Neuhausser and Alfa Laval AB patents should be excluded. In addition, as explained above, although the Giegel patent is not referenced as rendering obvious the patents-in-suit in the prior pretrial order, Syntron's previous Memorandum of Contentions of Fact and Law or the expert report, it was cited as prior art that might be used to invalidate the patents-in-issue. (Abbott's Second Lodgment, Ex. 1 at 5.) Therefore, the Giegel patent should not be excluded. Lastly, it appears that Deutsch (I or II) was mentioned in the expert report, (Abbott's Second Lodgment, Ex. 2 ¶ 83), and this Court recommends that it not be excluded.

6. Paragraph 55. Whether, to one of ordinary skill in the art, Claims 22, 29 and 30 of the '162 patent were rendered obvious by Litman I alone, or Litman I in view of Neuhausser and/or Alfa Laval AB patents and patent applications.

This paragraph contains the new prior art references which should have been disclosed during discovery. Therefore, in accordance with the reasoning set forth in Section A above, this Court recommends that the issue set forth in this paragraph be excluded.

7. Paragraph 56. Whether, to one of ordinary skill in the art, Claims 22, 29 and 30 of the '162 patent were rendered obvious by Giegel alone, or Giegel in view of Neuhausser and/or Alfa Laval AB patents and patent applications.

As discussed above, the recently disclosed prior art references of Neuhausser and Alfa Laval AB patents should be excluded. The Giegel prior art reference as stated in paragraph 56 is not in the previous pretrial order, Syntron's prior Memorandum of Contentions of Fact and Law, or in the expert report. However, Abbott had notice, during discovery, that it may be used to invalidate the patents-in-issue. (Abbott's Second Lodgment, Ex. 1 at 5.) Therefore, the Giegel patent should not be excluded.

C. Inequitable Conduct Defense (paragraphs 60, 62-65, & 66 of the Pretrial Order)

1. Paragraphs 60, 62 & 66

Abbott argues that Syntron raises for the first time certain inequitable conduct defenses as set forth in paragraphs 60, 62 and 66 of the pretrial order. It argues that the inequitable conduct issue was never

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Page 11

raised in pleadings or discovery. Furthermore, it claims that the inequitable conduct claim was not based on Abbott's conduct but that of the "applicants." Abbott states that although it assisted in the prosecution of the patents, the inventors took primary responsibility in the prosecution. Lastly, Abbott contends that it will be prejudiced because this issue was not raised in expert reports.

In opposition, Syntron contends that it has been raising the "inequitable conduct" defense based on Abbott's conduct since the beginning of the lawsuit. Syntron further argues that its claim against the "applicant" is against Abbott because Abbott became the exclusive licensee of the patents in 1988 which gave Abbott significant control over prosecution of the applications. (Syntron's Lodgment, Ex. 12.) In further support, Syntron states that Abbott's in-house counsel, Gregory Steele was added as attorney of record in the application for the '162 patent on January 3, 1995. (Syntron's Lodgment, Ex. 13.) Syntron also argues that expert reports are not needed to address this issue.

*14 Syntron raised the "inequitable conduct" issue when it filed its answer with counterclaims. Syntron's Sixth Affirmative Defense states "Abbott is estopped from asserting that Syntron has infringed the 484 patent or the 162 patent by reason of actions taken and statements made by the applicant to the Patent Office during prosecution of the application which led to the 484 and 162 patents." This statement is broad as it relates to Abbott's conduct. In the Seventh Affirmative Defense, Syntron alleges inequitable conduct by the "applicant." Therefore, inequitable conduct, in paragraphs 60, 62, and 66 with regards to both patents-in-issue, was alleged early in the litigation.

Inequitable conduct was also raised in interrogatories. In the revised response interrogatory no. 13, when Abbott asked Syntron to state the basis for its allegation that the patents-in-suit are "unenforceable or barred for any reason relating to the conduct of the inventors or the licensee." (Abbott's Second Lodgment, Ex. 1 at 13-15.) Syntron responded by reciting the Seventh Affirmative Defense which alleges inequitable conduct by the "applicant." (Id.) The response also included inequitable conduct based on concealing correct inventorship of the 484 patent from the patent office. (Id. at 14.)

On December 29, 1988, Abbott became the exclusive licensee to patents '220 and '459 that

eventually issued as the '484 and '162 patents. (Syntron's Lodgment, Ex. 12.) The '484 patent was issued on December 17, 1991 and the '162 patent was issued on August 5, 1997. As part of the license agreement, Abbott had the duty to prosecute any application related to the 220 and 459 patents which would include the 484 and 162 patents. (Id. at 73.) As Syntron points out, Gregory Steele was named attorney of record for the 162 patent application. (Id., Ex. 13.) Abbott states that it "assisted" in the prosecution of the patents. However, it appears that Abbott was significantly more involved in the prosecution of the patents-in-issue than mere "assistance."

The inequitable conduct issue was brought up in the pleadings and in interrogatories, contrary to what Abbott claims. The Court also notes that the inequitable conduct issue was raised in the prior pretrial order filed August 21, 2000. (Abbott's Lodgments, Ex. J at 74.) Abbott had notice of these issues since last year and at no time contacted the Court to re-open discovery on these issues. By virtue of the answer with affirmative defenses and reference to same in interrogatory answers, Abbott had notice and full opportunity to explore the issue during the scheduled discovery time. This Court finds that the inequitable conduct issue was raised in discovery and recommends that the issue not be excluded.

During oral argument, both counsel stated that no expert discovery was conducted on this issue. There is a dispute whether expert testimony is needed on this issue. At oral argument, Syntron stated that expert testimony would be helpful, but it would not be required, while Abbott asserted that expert testimony is needed. At no time did Syntron's expert, in reports or during deposition testimony, raise the issue. [FN8] The trial court will determine whether expert testimony should be presented on this issue. If the Court finds that expert testimony is required on this issue, this Court recommends that the issue be excluded based on prejudice against Abbott, or in the alternative, that the trial be continued and expert discovery re-opened.

> FN8. Dale H. Hoscheit, Esq. issued an "expert report" on March 22, 2000 and raised the inequitable conduct issue regarding prosecution of the patents-in-issue. (Abbott's Second Lodgment, Ex. 3.) There are significant issues whether attorneys may serve as experts on these issues.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Page 12

2. Paragraphs 63-65

*15 Abbott also argues that paragraph 63 is based upon the new prior art and should be excluded. In addition, Abbott asserts that since expert reports do not address the issues in paragraphs 63-65, it will be prejudiced. Syntron argues that expert reports are not needed to address this issue.

Paragraph 63 contains an inequitable conduct issue as it relates to the newly disclosed prior art. As discussed above, these new references should have been disclosed in discovery and this Court recommends that the issue set forth in paragraph 63 be excluded. However, since inequitable conduct was raised in pleadings and discovery, this Court recommends that the issues set forth in paragraphs 64 and 65 not be excluded. As noted above, both parties disagree whether expert reports are needed on these issues. Based upon the submitted documents, it appears that Syntron's expert, Dr. Gary S. David, did not raise these issues in his report or during his deposition testimony. The trial court will determine whether expert testimony should be presented on this issue. If the Court determines that expert reports will be required on paragraphs 64-65, this Court recommends that the paragraphs be excluded based on prejudice against Abbott, or in the alternative, that the trial be continued and expert discovery re-opened.

D. Inventorship (paragraph 69 of the Pretrial Order)

Abbott contends that Syntron failed to properly raise the inventorship issue as an affirmative defense, failed to disclose any evidence of alleged incorrect inventorship during discovery and failed to identify the allegedly correct inventors or facts supporting that contention. Abbott also argues that it will be prejudiced since there was no expert testimony about inventorship. In opposition, Syntron argues that it has continually preserved the inventorship issue in its pleadings and in discovery. Moreover, Syntron argues that Abbott has known about the inventorship issue for at least six years when it was brought up as a defense in another lawsuit. Also, Syntron learned about the inventorship issue through Abbott when Abbott produced a memorandum by Dr. Brian Lee about why he should have been named as a co-inventor during deposition in another lawsuit. (Syntron's Lodgment, Ex. 5.)

Under the Federal Rules, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief ..." Fed. Rule Civ. P. 8(a). The Rules do not require a "claimant to set out

in detail the facts upon which he bases his claim ... [this] is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." Vivid Techs., Inc. v. American Science & Eng'g, Inc., 200 F.3d 795, 802 (Fed.Cir.1999) (quoting Conley v. Gibson, 355 U.S. 41, 47-48 (1957)). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Id.

*16 Syntron filed an answer with counterclaim seeking declaratory judgment that the patents-in-suit are invalid and unenforceable. (Answer with Counterclaims at 7.) Although inventorship was not specifically pled, the counterclaim of invalidity encompasses the claim of inventorship. Syntron's counterclaim satisfied the "short and plain statement of the claim" of the Federal Rules.

In written interrogatories, the issue of inventorship of the '484 patent was explicitly brought up. (Abbott's Lodgments, Ex. 1 at 12-15). It also appears inventorship was brought up in Dr. Swanson's depositions and in the memorandum by Dr. Brian Lee. (Syntron Lodgments, Ex. 5 & 6.) Both parties stated that expert testimony was not conducted on this issue.

Although Abbott argues that expert testimony is required, it has presented no case law and this Court has not found any case law to support that proposition. In proving inventorship by clear and convincing evidence, the court must look to the evidence as a whole which includes the testimony of the alleged inventor and corroborative evidence that he presents. See Marketel Int'l, Inc. v. Priceline.com, 139 F.Supp.2d 1210, 1213 (N.D.Cal.2001); Vivus, Inc. v. Kercso, 977 F.Supp.1004, 1011 (N.D.Cal.1997).

The Court finds that the inventorship issue was disclosed during discovery and recommends that the issue not be excluded. Both parties dispute whether expert testimony is needed on inventorship. Syntron argues that it is not needed while Abbott contends that expert testimony is needed. It appears that Syntron's expert, Dr. Gary S. David, did not raise the issue in his report or during his deposition testimony. The trial court will determine whether expert testimony should be presented on this issue. If the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 13
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Court finds that expert testimony is required on this issue, this Court recommends that the issue be excluded based upon prejudice against Abbott, or in the alternative, that the trial be continued and expert discovery re-opened.

III. *Conclusion*

Based on the reasons set forth above, this Court recommends that Abbott's Motion to Exclude Evidence be GRANTED in part and DENIED in part. This Court makes the following recommendations:

1. Paragraphs 36-44. The recently disclosed nine prior art references in these paragraphs should be excluded.

2. Paragraph 45. The recently revealed prior art references of the Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article should be excluded. The Deutsch I, Grubb, Tom, Bauman, Giegel, Deutsch II, Brown and Kelton patents and the Glad article should not be excluded.

3. Paragraph 46. The recently revealed prior art references of the Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article should be excluded. The Deutsch I, Grubb, Tom, Bauman, Giegel, Deutsch II, Brown and Kelton patents and the Glad article should not be excluded.

4. Paragraphs 47, 48, 50, 51, 52 and 54. Except for the new prior art references of the Litman I, Neuhausser, Alfa Laval AB patents, which should be excluded, all the applications in these paragraphs should not be excluded.

*17 5. Paragraph 49. The Deutsch (I or II), Bauman, Grubb, Glad, Giegel, and Tom patents should not be excluded and the Litman I, Neuhausser and Alfa Laval AB patents should be excluded.

6. Paragraph 53. The Deutsch (I or II) and Giegel patents should not be excluded and the Litman I, Neuhausser and Alfa Laval AB patents should be excluded.

7. Paragraph 55. The applications in this paragraph should be excluded.

8. Paragraph 56. The Giegel patent should not be excluded and the Neuhausser and Alfa Laval AB patents should be excluded.

9. Paragraphs 60, 62, and 66. The issue of inequitable conduct in these paragraphs should not be excluded.

10. Paragraph 63. The issue of inequitable conduct as it relates to the newly disclosed prior art references in this paragraph should be excluded.

11. Paragraphs 64-65. The issue of inequitable

conduct should not be excluded in these paragraphs.

12. Paragraph 69. The issue of inventorship in this paragraph should not be excluded.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before August 10, 2001. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed and served on or before August 17, 2001.

IT IS SO ORDERED.

2001 WL 34082555 (S.D.Cal.)

**Motions, Pleadings and Filings** (Back to top)

• 2003 WL 22769056 (Trial Motion, Memorandum and Affidavit) Syntron Bioresearch, Inc.'s Notice of Motion and Motion for Partial Summary Judgment of Invalidity of U.S. Patent Nos. 5,073,484 and 5,654,162 Under 35 U.S.C. § 102 (May. 08, 2003)

• 2003 WL 22769057 (Trial Motion, Memorandum and Affidavit) Syntron's Reply Memorandum of Points and Authorities in Further Support of its Motion for Partial Summary Judgment of Invalidity of U.S. Patent Nos. 5,073,484 and 5,654,162 Under 35 U.S.C. § 102 (May. 08, 2003)

• 2000 WL 34217824 (Trial Motion, Memorandum and Affidavit) Syntron's Reply Memorandum of Points and Authorities in Further Support of Its Motion for Partial Summary Judgment of Invalidity of U.S. Patent No. 5,654,162 Under 35 U.S.C. § 112, %57 1 (May. 09, 2000)

• 2000 WL 34217820 (Trial Motion, Memorandum and Affidavit) Syntron's Memorandum of Points and Authorities in Opposition to Abbott's Motion for Summary Judgment of Infringement (May. 08, 2000)

• 2000 WL 34217821 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Memorandum of Points and Authorities That the '162 Patent Is Valid Under 35 U.S.C. § 112, %57 1 (May. 08, 2000)

• 2000 WL 34217822 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Memorandum of Points and Authorities That the '484 and '162 Patent Are Valid Under 35 U.S.C. § 102 (May. 08, 2000)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Page 14

• 2000 WL 34217823 (Trial Motion, Memorandum
and Affidavit) Declaration of Erik Paul Belt in
Support of Abbott's Motion for Summary Judgment
That Syntron Infringes the Patents-In-Suit (Mar. 22,
2000)

• 1999 WL 33732458 (Trial Motion, Memorandum
and Affidavit) Abbott's Memorandum of Points and
Authorities in Opposition to Syntron's Motion to Stay
Discovery (May. 10, 1999)

• 1999 WL 33732457 (Trial Motion, Memorandum
and Affidavit) Defendant's Memorandum of Points
and Authorities in Support of Motion to Stay
Discovery (Apr. 20, 1999)

• 1999 WL 33732460 (Trial Pleading) Plaintiff and
Counter-Defendant Abbott Laboratories' Reply to
Defendant Syntron Bioresearch, Inc.'s Counter-
Claim; Demand for Jury Trial (Mar. 17, 1999)

• 1999 WL 33732459 (Trial Pleading) Answer with
Counterclaims (Feb. 22, 1999)

• 1998 WL 34181233 (Trial Pleading) Complaint for
Patent Infringement in Violation of 35 U.S.C. Section
241(a) and Demand for Jury Trial (Dec. 30, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
ABBOTT LABORATORIES, an Illinois corporation,
Plaintiff,
v.
SYNTRON BIORESEARCH, INC., a California
corporation, Defendant.
**No. 98-CV-2359 H(POR).**

Aug. 24, 2001.

Order Adopting Report and Recommendation;
Granting in Part, Denying in Part
Abbott's Motion to Exclude Evidence: Excluding
Nine Newly Disclosed Prior Art
References; Not Excluding Five Other Prior Art
References; Not Excluding Issues
of Inequitable Conduct and Inventorship

HUFF, Chief J.

*1 AND RELATED CROSS-ACTIONS.

On July 2, 2001, Plaintiff Abbott Laboratories filed a motion to exclude Defendant Syntron Bioresearch, Inc.'s untimely prior art references of validity and untimely issues of inequitable conduct and inventorship. The Court referred the motion to Magistrate Judge Louisa S. Porter on a report and recommendation basis. Syntron filed its opposition on July 11, 2001. On July 16, 2001, Abbott filed a reply. Judge Porter held telephonic oral arguments on July 20, 2001.

On August 3, 2001, Judge Porter issued a Report and Recommendation, recommending that the motion to exclude evidence be granted in part and denied in part. On August 10, 2001, both parties submitted objections to the Report and Recommendation and on August 17, 2001, the parties both submitted replies to the objections.

I. Procedural Background
On December 30, 1998, Abbott filed a Complaint alleging patent infringement. On February 22, 1999,

Syntron filed an Answer with Counterclaims seeking declaratory judgment that it did not infringe Abbott's patents and that Abbott's patents are invalid and unenforceable. After a case management conference, the Court issued a scheduling order on May 13, 1999. Pursuant to the scheduling order, all fact discovery was to be completed by February 28, 2000, and the final date to conduct depositions of experts was to be April 14, 2000. On March 21, 2000, this Court extended the final date to conduct expert discovery to April 28, 2000.

Summary judgment motions, *Markman* hearings on the construction of claims and motions for reconsideration were heard between Spring 2000 through Spring 2001. On July 31, 2000, the parties filed their Memoranda of Contentions of Facts and Law. A proposed Pretrial Order was submitted on August 28, 2000.

On May 24, 2001, Syntron filed a Notice of Prior Art pursuant to 35 U.S.C. § 282. On June 7, 2001, the parties submitted a revised Memoranda of Contentions of Facts and Law. A pretrial conference was held on June 22, 2001 and a Pretrial Order was filed on the same day. On June 27, 2001, the Court issued a scheduling order setting trial to begin on September 11, 2001.

On June 25, 2001, the Court issued an Order Referring Issues in Pretrial Order to Magistrate Judge for Report and Recommendation. [FN1] Specifically, the Court asked Magistrate Judge Porter to address 1) the requirements of whether the prior art should have been disclosed in discovery or expert reports; 2) whether the inventorship issue should have been disclosed in discovery or expert reports; 3) if there was any violation of proper discovery procedures; 4) and if Abbott was prejudiced by the lack of disclosure.

FN1. The items in dispute are indicated by asterisks next to the paragraph number in the Pretrial Order.

II. Analysis
A. Prior Art References (paragraphs 36-44 of the Pretrial Order)

Paragraphs 36-44 of the Pretrial Order set forth nine prior art references (Weiss, Schuurs, Guire, Renn, Maggio, Litman I, Neuhäusser) that were not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Page 2

disclosed by Syntron until May 24, 2001, more than a year after discovery had closed.

*2 Between April 28, 2000 (the close of expert discovery) and May 24, 2001, Syntron never filed a supplemental disclosure or response. *See* Fed.R.Civ.P. 26(e)(1) & (2). Syntron argues that Abbott is not prejudiced by the new disclosures because it knew about these references based on previous litigation or prosecution of the patents-in-suit. However, Abbott did not have knowledge that these prior arts would be an issue in this particular case. In addition, there has been no expert discovery conducted on these references.

"The purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir.1984) (citations omitted). Federal Rules of Civil Procedure 26(e)(1) and (2) establish a duty to supplement or correct discovery. If a party fails to supplement disclosures or responses, the court may issue sanctions pursuant to Fed.R.Civ.P. 37(c)(1):

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed ...

In cases involving patent invalidity or infringement notice of prior art references is also governed by 35 U.S.C. § 282, which provides:

In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit ...

35 U.S.C.A. § 282 (West Supp.2000). The Federal Rules of Civil Procedure and § 282 co-exist. *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed.Cir.1998); *Eaton Corp. v. Appliance Valves Corp.*, 190 F.2d 874, 879 (Fed.Cir.1986). Section 282 sets a minimum period for identification of prior art; however, "when the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial." *ATD Corp.*, 159 F.3d at 551 (excluding prior art because defendant presented no reason to justify inclusion of prior art

that was presented four months after extended discovery ended and one month before a first rescheduled pretrial conference). The purpose of both the Federal Rules and § 282 is to prevent unfair and prejudicial surprise. *Id.*

Magistrate Judge Porter found that Syntron failed to present any "substantial justification" for its delay in presenting the prior art references. *See* Fed.R.Civ.P. 37(c)(1); Scheduling Regulating Discovery and Other Pretrial Proceedings, May 13, 1999. Based on the prejudice suffered by Abbott, Judge Porter recommended that the Court exclude all reference to the nine prior art references in paragraphs 36-44 of the Pretrial Order.

*3 Syntron objects to this portion of the Report and Recommendation. Syntron disagrees with the exclusion of any of the nine references, but focuses its Objection to three prior art references: the Takeda article; the Alfa Laval AB patent; and the Litman I patent. [FN2] Syntron argues that Abbott is not prejudiced by having to respond to the Takeda and Alfa Laval AB references because it has know about them since 1999 and 1986, respectively, when they were cited against Abbott in its foreign prosecution of these patents. Syntron also argues that Abbott is not prejudiced by having to respond to Litman I because the relevant portions of Litman I are identical to Litman III, which was discussed in the report by Attorney Hoscheit, Syntron's patent law expert. However, Litman III is not disclosed in the Pretrial Order and thus not within scope of trial.

> FN2. In Syntron's Reply to Abbott's Objections to the Report and Recommendation, Syntron stated that it was willing to forego all the disputed prior art references, including those allowed by Judge Porter, in favor of the introduction of the Takeda, Alfa Laval AB, and Litman I references.

Syntron fails to offer any reason why these prior art references were not disclosed earlier. Syntron states that it disclosed the references as soon as it discovered them in May, 2001, however, all of the references were available to Syntron two years ago, during the discovery phase of this case. In March 2000, Dr. David, Syntron's expert, opined that the '484 and '162 patents are invalid on various grounds and cited five prior art references. Dr. David did not identify Takeda, Litman, or Alfa Laval.

Abbott has not conducted expert discovery on the

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

Page 3

nine newly disclosed references. Syntron states that Dr. David is available for a deposition at Abbott's convenience. However, leave of court is required to conduct additional depositions at this stage in the litigation. Fed.R.Civ.P. 30(a)(2)(C); Fed.R.Civ.P. 29. The Magistrate Judge concluded that Abbott is prejudiced by the lack of expert discovery and recommended that the nine reference be excluded. The Court ADOPTS the Report and Recommendation and excludes the nine prior art references listed in paragraphs 36-44 of the Pretrial Order.

B. New Applications (paragraphs 45-56 of the Pretrial Order)

Paragraphs 45-56 of the Pretrial Order list sixteen different prior art references, alone or in combination, as invalidating the patents-in-suit. As discussed above, the nine new prior art references are excluded from trial. Abbott argues that five other prior art references (Deutsche II, Brown, Litman II, Bauman, Kelton) mentioned in paragraphs 45-56 should also be excluded. Abbott contends that these references were not properly identified in discovery and that it will be prejudiced if Syntron is allowed to raise these reference at trial. In opposition, Syntron contends that these issues are not new applications but were included in Syntron's original Memorandum of Contentions of Facts and Law filed on July 31, 2000 and in the previous Pretrial Order filed in August 2000. It further argues that prior art reference, like any other piece of evidence, once admitted, is admissible for any purpose for which it is relevant.

Judge Porter recommended that the five prior art references not be excluded. Judge Porter found that the Brown and Deutsche II patents were listed as prior art references in Syntron's responses to interrogatories and the Deutsche II, Brown, and Kelton patents were stipulated to as prior art in the Pretrial Order filed June 22, 2001. Judge Porter concluded that "[a]lthough the patents were not specifically mentioned as 'invalidating prior art,' Abbott had notice that these prior art references may be used to invalidate the patents-in-issue." Report and Recommendation at 7. Judge Porter also found that the combinations of Tom, Deutsche (I or II), Bauman, Grubb, Giegel and Glad were in the proposed Pretrial Order dated August 21, 2000. Judge Porter concluded that although Abbott may suffer prejudice by allowing these references, the prejudice was created by Abbott's failure to file a motion either to exclude or re-open discovery a year ago.

*4 Abbott objects to this recommendation. Abbott argues that the five references and new uses of previously identified prior art should be excluded because Syntron did not identify them as invalidating prior art during the scheduled discovery period. Specifically, Abbott argues that Dr. David never opined that any of the five references (Deutsche II, Litman II, Kelton, Bauman, Brown) invalidated the asserted claims of the patents-in-suit. Abbott further contends that: (1) Syntron failed to identify three of the references in response to its interrogatory requesting identification of prior art; (2) Mr. Hoscheit, Syntron's patent law expert, stated that Syntron was not relying on Bauman as an invalidating reference; and (3) neither Dr. David nor Mr. Hoscheit ever opined on the Brown reference.

Abbott contends that the Report and Recommendation allowing the five references is based on three misconceptions of the facts. Abbott first asserts that just because it stipulated that the references are prior art does not mean that it admits they can be asserted at trial. Abbott specifically reserved this objection in the Pretrial Order. See Pretrial Order at p. 7, ¶ 2 ("[b]y admitting [the references] are prior art to the patents-in-suit, Abbott does not admit that Syntron may assert them at trial because it has not previously identified them as invalidating art"). Second, Abbott contends that although Rule 26 is not incorporated by name in the Scheduling Order, its substance is incorporated. See Scheduling Order ("Opinions and reasons for opinions not disclosed during depositions or in reports are subject to exclusion absent substantial justification"). Finally, Abbott asserts that it was improper for Syntron to raise the new applications and combinations or prior art in the July 31, 2000 Memorandum of Contentions of Fact and Law. Abbott contends that it preserved its objection to the new applications and combinations in the original proposed Pretrial Order. See Pretrial Order, August 2000, p. 13, ¶ 35.

Syntron replies that the five references Abbott contests were not referred to the Magistrate Judge for a report and recommendation. Syntron points out that these five references were listed in the Pretrial Order as stipulated facts. Syntron contends that Abbott has known about these references for a year and has failed to object or cite authority for its position that previously disclosed references can not be used in new combinations. Syntron claims that any alleged prejudice suffered by Abbott could be cured with a supplemental deposition of Dr. David. Syntron states that it is not seeking to depose Abbott's expert, Dr.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Harlow, about these references.

The Court ADOPTS the Report and Recommendation and will not exclude the five references from trial. Abbott had notice that these references were prior art to the patents-in-suit and will not be prejudiced having to defend against them to an extent which would require excluding them from trial. However, the Court reserves the right to limit testimony about the five references in accordance with the Federal Rules of Evidence during the course of the trial.

C. Inequitable Conduct Defense (paragraphs 60, 62-65, & 66 of the Pretrial Order)

1. Paragraphs 60 and 62

*5 Paragraphs 60 and 62 of the Pretrial Order make general allegations of inequitable conduct by Abbott. Abbott argues that the inequitable conduct issue was never raised in pleadings or discovery. Furthermore, it claims that the inequitable conduct claim was not based on Abbott's conduct but that of the "applicants." Abbott states that although it assisted in the prosecution of the patents, the inventors took primary responsibility in the prosecution. Lastly, Abbott contends that it will be prejudiced because this issue was not raised in expert reports.

Magistrate Judge Porter determined that Syntron raised the "inequitable conduct" issue when it filed its answer with counterclaims. Syntron's Sixth Affirmative Defense states "Abbott is estopped from asserting that Syntron has infringed the 484 patent or the 162 patent by reason of actions taken and statements made by the applicant to the Patent Office during prosecution of the application which led to the 484 and 162 patents." This statement is broad as it relates to Abbott's conduct. In the Seventh Affirmative Defense, Syntron alleges inequitable conduct by the "applicant." Therefore, inequitable conduct, in paragraphs 60 and 62 with regards to both patents-in-issue, was alleged early in the litigation. Inequitable conduct was also raised in interrogatories.

The Court also notes that the inequitable conduct issue was raised in the prior pretrial order filed August 21, 2000. Abbott had notice of these issues since last year and at no time contacted the Court to re-open discovery on these issues. By virtue of the answer with affirmative defenses and reference to same in interrogatory answers, Abbott had notice and full opportunity to explore the issue during the scheduled discovery time. Judge Porter concluded

that the inequitable conduct issue was raised in discovery and recommended that the issue not be excluded. The Court ADOPTS the Recommendation with respect to the general allegations of inequitable conduct found in paragraphs 60 and 62 of the Pretrial Order.

However, Judge Porter also recommended if expert testimony is required on this issue of inequitable conduct, then the issue should be excluded based on prejudice against Abbott. [FN3] It appears from Syntron's papers that the only specific inequitable conduct issues are those listed in paragraphs 63-66.

> FN3. At oral argument, Syntron stated that expert testimony would be helpful, but it would not be required, while Abbott asserted that expert testimony is needed. At no time did Syntron's expert, in reports or during deposition testimony, raise the specific issue of inequitable conduct.

2. Paragraphs 63-65

Paragraphs 63-65 set forth inequitable conduct allegations for failure to disclose certain reference to the patent examiner and or the PTO during prosecution of the '484 or '162 patents. Paragraph 63 discusses inequitable conduct as it relates to the newly disclosed prior art. As set forth above, these references are excluded from trial. Consequently, the allegations in paragraph 63 are excluded from trial.

In paragraphs 64 and 65, Syntron alleges an inequitable conduct defense based on Abbott's failure to point out the asserted patentable novelty over Deutsche I, Bauman, Grubb, Giegel, Litman II, Tom, or Hochstrasser.

*6 Abbott argues that Syntron will need to support its inequitable conduce defenses with expert testimony. Abbott relies on *Life Technologies, Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1325 (Fed.Cir.2000), for its assertion that expert testimony is required on the issue of materiality in the inequitable conduct inquiry. In *Life Technologies,* the Federal Circuit explained what "material" means in the context of an inequitable conduct challenge:
Information is material when there is a substantial likelihood that a reasonable Examiner would have considered the information important in deciding whether to allow the application to issue as a patent. Because patentability is assessed from the perspective of the hypothetical person of ordinary skill in the art, information regarding the subjective

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

motivations of inventors is not material. *Life Technologies,* 224 F.3d at 1325 (citations omitted). The *Life Technologies* Court did not state that expert testimony was need to prove materiality. However, an expert is needed to voice the understanding of a hypothetical person of ordinary skill in the art.

Syntron's expert, Dr. David, has opined that Grubb, Deutsche I, Tom, Hochstrasser, and Giegel patents, and Glad article invalidate the patents-in-suit. In addition, Mr. Hoscheit has opined that the patentee breached its duty of candor to the Patent Office by failing to submit Hochstrasser and Litman III to the Patent Office. While they didn't render an opinion specifically addressing inequitable conduct, the testimony of Dr. David and Mr. Hoscheit establishes the materiality of most of these references relevant to Syntron's inequitable conduct defense. Potentially invalidating references are material and there is a substantial likelihood that a reasonable Examiner would have considered the information important in decided whether to allow the application to issue as a patent. However, it does not appear that any showing of materiality has been made with respect to the Bauman and Litman II references.

At this time, the Court ADOPTS the Report and Recommendation. The Court will not exclude Syntron's inequitable conduce defense from trial, however, Syntron must make a proper showing of materiality before the evidence can be admitted. Based on the scope of the expert reports, the Court does not see how Syntron can raise the Bauman or Litman II references. Nevertheless, the Court reserves final judgment for trial when the Court is in a better position to evaluate the issue.

3. Paragraph 66

Paragraph 66 alleges inequitable conduct based on concealing the correct inventorship from the PTO with deceptive intent. For the reasons set forth in Section D below, the Court will not exclude this defense from trial but the necessary evidentiary proof must be made before evidence of inequitable conduct based on inventorship will be presented to the jury.

D. Inventorship (paragraph 69 of the Pretrial Order)

Abbott contends that Syntron failed to properly raise the inventorship issue as an affirmative defense, failed to disclose any evidence of alleged incorrect inventorship during discovery and failed to identify the allegedly correct inventors or facts supporting

that contention. Abbott also argues that it will be prejudiced since there was no expert testimony about inventorship. In opposition, Syntron argues that it has continually preserved the inventorship issue in its pleadings and in discovery. Moreover, Syntron argues that Abbott has known about the inventorship issue for at least six years when it was brought up as a defense in another lawsuit. Also, Syntron learned about the inventorship issue through Abbott when Abbott produced a memorandum by Dr. Brian Lee about why he should have been named as a co-inventor during deposition in another lawsuit. However, both parties stated that expert testimony was not conducted on this issue.

**\*7** The Report and Recommendation concludes that the inventorship issue was adequately disclosed during discovery and recommended that it not be excluded. However, Judge Porter did note that if expert testimony was required on the issue then the Court recommends that the issue be excluded based upon prejudice against Abbott.

Abbott argues that expert testimony is required for Syntron to meet its burden to prove inventorship issues by clear and convincing evidence. *See Environ Prods. v. Furon Co.,* 215 F.3d 1261, 1265 (Fed.Cir.2000) (a party challenging patent validity for omission of an inventor must present clear and convincing evidence that the omitted individual actually invented the claimed invention). Abbott relies on *Acromed Corp. V. Sofamor Danek Group, Inc.,* 253 F.3d 1371, 1378-1381 (Fed.Cir.2001) to support its contention that expert testimony is required. While the *Acromed* Court makes clear that Syntron has the burden of proving that the omitted co-inventor's contribution was more than just the normal contributions of one of ordinary skill in the art, the case does not hold that this evidence must be presented through expert testimony. The *Acromed* Court noted that the defendant "could have countered this by producing testimony at trial concerning what would or would not be obvious to one ordinarily skilled in the art ... [the defendant] never did." *Acromed,* 253 F.3d at 1380.

Syntron has not offered expert testimony on the inventorship issue. However, Abbott has failed to present any case law that establishes that expert testimony is required. The Court is unclear how Syntron will meet its burden to prove the inventorship issues it raises by clear and convincing evidence, however, the Court will not exclude the issue at this time. The Court ADOPTS the Report and Recommendation. However, the Court reserves final

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

judgment on the inventorship issue until trial.

### III. Conclusion

For the reasons set forth above, the Court ADOPTS the Report and Recommendation RE: Plaintiff's Motion to Exclude Evidence. The recently disclosed prior art references found in paragraphs 56 of the pretrial order are excluded without prejudice. The remaining prior art references are not excluded. Inequitable conduct and inventorship issues are not excluded at this time but will be limited at trial if Syntron fails to meet its evidentiary burden.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE

PORTER, Magistrate J.

[Document No. 241]
And related cross-claims

On July 2, 2001, Plaintiff Abbott Laboratories filed a motion to exclude Defendant Syntron Bioresearch, Inc.'s untimely prior art references of validity and untimely issues of inequitable conduct and inventorship. Syntron filed its opposition on July 11, 2001. On July 16, 2001, Abbott filed a reply. Oral arguments were heard telephonically on July 20, 2001.

This matter has been referred to Magistrate Judge Louisa S. Porter on a report and recommendation basis from District Judge Marilyn L. Huff. Based on the foregoing, this Court recommends that Plaintiff's motion be GRANTED in part and DENIED in part.

### I. Procedural Background

*8 On December 30, 1998, Abbott filed a Complaint alleging patent infringement. On February 22, 1999, Syntron filed an Answer with Counterclaims seeking declaratory judgment that it did not infringe Abbott's patents and that Abbott's patents are invalid and unenforceable. After a case management conference, this Court issued a scheduling order on May 13, 1999. Pursuant to the scheduling order, all fact discovery was to be completed by February 28, 2000, and the final date to conduct depositions of experts was to be April 14, 2000. On March 21, 2000, this Court extended the final date to conduct expert discovery to April 28, 2000.

Summary judgment motions, *Markman* hearings on the construction of claims and motions for reconsideration were heard between Spring 2000 through Spring 2001. On July 31, 2000, the parties filed their Memoranda of Contentions of Facts and Law. A Pretrial Order was filed on August 28, 2000.

On May 24, 2001, Syntron filed a Notice of Prior Art pursuant to 35 U.S.C. § 282. On June 7, 2001, the parties submitted a revised Memoranda of Contentions of Facts and Law. A pretrial conference was held on June 22, 2001 and a Pretrial Order was filed on the same day. On June 27, 2001, Judge Huff issued a scheduling order setting trial to begin on September 11, 2001.

On June 25, 2001, Judge Huff issued an Order Referring Issues in Pretrial Order to Magistrate Judge for Report and Recommendation. [FN1] Specifically, Judge Huff wanted this Court to address 1) the requirements of whether the prior art should have been disclosed in discovery or expert reports; 2) whether the inventorship issue should have been disclosed in discovery or expert reports; 3) if there was any violation of proper discovery procedures; 4) and if Abbott was prejudiced by the lack of disclosure.

> FN1. The items in dispute are indicated by asterisks next to the paragraph number.

### II. Analysis

A. Prior Art References (paragraphs 36-44 of the Pretrial Order) [FN2]

> FN2. Abbott claims that there are fourteen prior art references at issue. Syntron argues that only nine are at issue and the additional five are stipulated facts in the Pretrial Order. District Judge Huff referred certain disputed issues in the pretrial order, specifically, paragraphs 36- 44. Therefore, this Court will only address the nine prior art references contained in paragraphs 36-44.

The federal rules of discovery are designed to give parties knowledge of all relevant facts before going to trial in order to prevent surprise. *Shelak v. White Motor Co.,* 581 F.2d 1155, 1159 (5th Cir.1978) (*citing Hickman v. Taylor,* 329 U.S. 495 (1947)). "The purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Whittaker Corp. v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 7
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

*Execuair Corp.,* 736 F.2d 1341, 1347 (9th Cir.1984) (citations omitted). Notwithstanding the discovery cut-off date, Fed.R.Civ.P. 26(e)(1) and (2) establishes a duty to supplement or correct discovery and provides:

(e) Supplementation of Disclosures and Responses. A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired ... in the following circumstances:

(1) A party is under a duty to supplement *at appropriate intervals* its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

**\*9** (2) A party is under a duty *seasonably* to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. (emphasis added).

Fed.R.Civ.P. 26(e)(1) & (2). The duty to supplement does not have to occur each time new information is learned but "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed.R.Civ.P. 26(e) (Committee Notes on Amendments (1993)).

If a party fails to supplement disclosures or responses, the court may issue sanctions pursuant to Fed.R.Civ.P. 37(c)(1):

A party that without *substantial justification* fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is *harmless,* permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed ... (emphasis added).

Fed.R.Civ.P. 37(c)(1). "A failure to disclose in a timely manner is equivalent to a failure to disclose."

*Transclean Corp. v. Bridgewood Servs., Inc.,* 101 F.Supp.2d 788, 795 (D.Minn.2000). Since exclusion of evidence is a harsh sanction, the court must look to whether there was substantial justification for nondisclosure or whether the failure was harmless. *Id.*

Notice of prior art pursuant to 35 U.S.C. § 282 provides:

In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit

35 U.S.C.A. § 282 (West Supp.2000). The Federal Rules of Civil Procedure and § 282 co-exist. *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 551 (Fed.Cir.1998); *Eaton Corp. v. Appliance Valves Corp.,* 190 F.2d 874, 879 (Fed.Cir.1986). Section 282 sets a minimum period for identification of prior art; however, "when the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial." *ATD Corp.,* 159 F.3d at 551 (excluding prior art because defendant presented no reason to justify inclusion of prior art that was presented four months after extended discovery ended and one month before a first rescheduled pretrial conference). The purpose of both the Federal Rules and § 282 is to prevent unfair and prejudicial surprise. *Id.* In *Eaton Corp.,* the Federal Circuit admitted prior art references that were submitted less than thirty days before trial began. *Eaton Corp.,* 190 F.2d at 879. The court explained that plaintiff was not prejudiced or surprised because the prior art references were provided to plaintiff in depositions, the plaintiff should have known about the prior art because it had been a competitor in the market for over 10 years, and the alleged inventor was familiar with the prior art. *Id.* at 880. As a result, plaintiff was able to adequately respond to the prior art. *Id.*

**\*10** Abbott contends that the nine prior art references were never revealed until May 24, 2001, on the "eve of trial." It argues that expert discovery ended on April 28, 2000 and that it will be severely prejudiced since it was unable to conduct expert discovery. In opposition, Syntron argues that it disclosed the references right after discovering them in April/May 2001. Syntron contends that Abbott will not be prejudiced since it was fully aware of all these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

prior art references through other litigation. Further, it asserts that prejudice to Abbott can be cured by giving it the opportunity to depose the experts on the prior art. [FN3]

> FN3. Syntron assumes that additional expert discovery can readily be conducted. However, leave of court will be required to conduct additional depositions. Fed.R.Civ.P. 30(a)(2)(C) & Fed.R.Civ.P. 29.

Fact discovery ended on February 28, 2000 and expert discovery was extended to April 28, 2000. Syntron filed its Notice of Prior Art on May 24, 2001, revealing nine new prior art references, over one year after discovery ended. Between April 28, 2000 and May 24, 2001, Syntron never filed a supplemental disclosure or response. Most of the nine prior art references were issued in the 1970's and 1980's and Syntron does not explain why these references were not revealed earlier. No expert discovery was conducted on these references. [FN4] Syntron only argues that Abbott will not be prejudiced because it knew about the references based on previous litigation or prosecution. However, Abbott did not have knowledge that these prior arts would be an issue in this particular case. Although Syntron argues that it complied with section 282 and promptly disclosed the prior arts after discovering them, Syntron does not present any "substantial justification" for its delay in presenting the prior art references.

> FN4. On July 23, 2001, a day after the motion hearing, Syntron submitted a Post-Hearing Submission of Supplemental Expert Report that was served upon Abbott. On July 24, 2001, Abbott filed a response to Syntron's Post-Hearing Submission. Since the Post-Hearing Submission of Supplemental Expert Report was not provided for in the scheduling order, it was not considered by this Court in this report and recommendation.

The patents-in-issue are complex. Expert discovery was conducted. There will be expert testimony on prior art references at trial. (See Pretrial Order at 17-19.) The newly revealed prior art references were not mentioned in discovery and Abbott had no opportunity to conduct expert discovery on these prior arts. Since no expert discovery has been conducted, Abbott will be prejudiced if these prior art references are admitted at trial. Based upon the prejudice suffered by Abbott, it is recommended that the

the Court exclude, at time of trial, all reference to these nine prior arts listed in the Pretrial Order in paragraphs 36-44. The only way to avoid this prejudice to Abbott is to continue the trial and re-open discovery to allow expert discovery on these limited issues.

B. New Applications (paragraphs 45-56 of the Pretrial Order)

Abbott argues that Syntron attempts to assert previously disclosed prior art references in new combinations and new ways that were never disclosed before in expert reports. It also argues that Syntron improperly raised the nine prior art references in these new combinations. In opposition, Syntron contends that these issues are not new applications but were included in Syntron's original Memorandum of Contentions of Facts and Law filed on July 31, 2000 and in the previous Pretrial Order filed in August 2000. It further argues that prior art reference, like any other piece of evidence, once admitted, is admissible for any purpose for which it is relevant.

*11 Expert disclosure under Rule 26 does not apply in this case because the Scheduling Order dated May 13, 1999, did not provide for it. Therefore, merely failing to disclose expert opinion on certain issues would not preclude testimony at trial. This Court focuses on the prejudice issue. Here, many of the new applications under paragraphs 45-56 were previously mentioned either in the prior Pretrial Order or Syntron's previous Memorandum of Contentions of Fact and Law. Therefore, Abbott was aware of these issues in August 2000 and had an opportunity to affirmatively act and failed to do so. For example, Abbott could have moved for leave to re-open discovery, or could have brought a motion before the Court regarding exclusion of disputed issues. Certain applications were disclosed in the previous Pretrial Order and/or Syntron's prior Memorandum of Contentions of Facts and Law while others were not. This Court will analyze the notice issue as relates to each of the applications at issue:
1. Paragraph 45--Whether Claims 22, 23 and/or 26 of the '484 patent are invalid as anticipated by the Weiss, Guire, Renn, Deutsch I, Grubb, Deutsch II, Litman I, Brown, Tom, Bauman, Giegel, Kelton, Neuhausser and Alfa Laval AB patents and patent applications, the Glad and Takeda articles, and/or the remaining references listed in the attached Exhibit List.

As discussed above, the Court recommends that the

Not Reported in F.Supp.2d
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Page 9

recently disclosed prior art references of Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article be excluded. Based upon prior notice, it is recommended that the Deutsch I, Grubb, Tom, Bauman, Giegel patents and the Glad article not be excluded. [FN5] Based upon the Court's review of the presented documents, the Brown and Deutsch II patents are listed as prior art references in Syntron's revised responses to interrogatories, (Abbott's Second Lodgment, Ex. 1 at 5), and the Deutsch II, Brown and Kelton patents are listed as Stipulated Facts in the Pretrial Order filed June 22, 2001, (Pretrial Order ¶ ¶ 16, 17 & 22). Although the patents were not specifically mentioned as "invalidating prior art," Abbott had notice that these prior art references may be used to invalidate the patents-in-issue. Accordingly, this Court recommends that the Brown, Deutsch II and Kelton patents not be excluded.

> FN5. The Grubb, Deutsch I and Tom patents are mentioned in the expert report of Dr. Gary S. David. (Abbott's Second Lodgment, Ex. 2 ¶ ¶ 60, 63, & 64.) The Bauman and Giegel patents and the Glad article are discussed in Syntron's previous Memorandum of Contentions of Fact and Law, dated August 1, 2000. (Syntron's Lodgment, Ex. 11 ¶ ¶ 109, 114, & 117). The Deutsch I, Bauman, Grubb, Giegel patents and the Glad article are also mentioned in the previous Pretrial Order, dated August 21, 2000. (Abbott's Lodgment, Ex. J ¶ 26.)

2. Paragraph 46. Whether Claims 22, 23, and/or 26 of the '484 patent are invalid as rendered obvious by the Weiss, Guire, Renn, Deutsch I, Grubb, Deutsch II, Litman I, Brown, Tom, Bauman, Giegel, Kelton, Neuhausser and Alfa Laval AB patents and patent applications, the Glad article and Takeda articles, and/or the remaining references listed in the attached Exhibit List, whether alone or in combination.

As discussed above, this Court recommends that the newly disclosed prior arts of Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article be excluded. Based upon prior notice, Deutsch I, Grubb, Tom, Bauman, Giegel, and the Glad article should not be excluded. [FN6] As discussed previously, the Brown and Deutsch II patents were listed as prior art references in Syntron's revised responses to interrogatories. (Abbott's Second Lodgment, Ex. 1 at 5.) Moreover, the Deutsch II,

Brown and Kelton patents are listed as Stipulated Facts of the Pretrial Order filed June 22, 2001. (Pretrial Order ¶ ¶ 16, 17 & 22.) Therefore, based upon prior knowledge, the Deutsch II, Brown and Kelton patents should not be excluded.

> FN6. The Tom, Grubb, Bauman, Deutsch I, Giegal patents and the Glad article are mentioned in Syntron's prior Memorandum of Contentions of Fact and Law filed August 1, 2000. (Syntron's Lodgments, Ex. 11 ¶ ¶ 108, 112, 113, 115, 116 & 118.)

*12 3. Paragraph 47. Whether, to one of ordinary skill in the art, Claims 22, 23 and 26 of the '484 patent were rendered obvious by the following combinations of references: (a) Deutsch (I or II) in view of Tom; (b) Grubb in view of Deutsch (I or II) and/or Bauman; (c) the Glad article in view of Deutsch (I or II) or Bauman; or (d) Giegel in view of Deutsch (I or II) or Bauman.
Paragraph 48. Whether Claim 1 of the '162 patent was anticipated by the Deutsch (I or II), Bauman, Grubb, Giegel, Giegel, Litman I, Tom, Neuhausser and Alfa Laval AB patents and patent applications, the Glad article, and/or remaining references listed in the attached Exhibit List.
Paragraph 50. Whether, to one of ordinary skill in the art, Claim 1 of the '162 patent was rendered obvious by the following combination of references: (a) Deutsch (I or II) in view of Tom; (b) Deutsch (I or II) in view of Tom and/or Bauman; (c) Grubb in view of Bauman and/or Deutsch (I or II); or (d) Glad in view of Bauman.
Paragraph 51. Whether, to one of ordinary skill in the art, Claim 1 of the '162 patent was made obvious by Giegel in view of Grubb.
Paragraph 52. [FN7] Whether Claims 22, 29 and 30 of the '162 patent are anticipated by the Deutsch (I or II), Litman I, Giegel patents and/or the remaining references listed in the attached Exhibit List.

> FN7. The Court notes that Claim 22 of patent '162 in paragraphs 52 and 54 is not mentioned in the prior pretrial order. It appears that the omission is the result of a typographical error since this claim was stated in Syntron's prior Memorandum of Contentions of Fact and Law.

Paragraph 54. Whether, to one of ordinary skill in the art, Claims 22, 29 and 30 of the '162 patent were rendered obvious by Deutsch I in view of Tom and/or Bauman.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 10
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Except for the new prior art references (Litman I, Neuhausser, Alfa Laval AB) in paragraph 48 that should be excluded, these applications were in the Pretrial Order dated August 21, 2000. (Abbott's Lodgments, Ex. J at 72-73.) At the time, Abbott objected to these paragraphs, (id. at 73); however, for almost one year, Abbott never made an attempt to file a motion, either to re-open discovery or to exclude. This Court finds that Abbott had notice of these issues as of August 21, 2000 and failed to act upon them even though a Magistrate Judge was assigned for purposes of pretrial discovery and scheduling. Therefore, although Abbott may suffer prejudice, that state was contributed to by Abbott's failure to act. It is recommended that the issues set forth in these paragraphs, except for the Litman I, Neuhausser and Alfa Laval AB patents, not be excluded. The Court further recommends that the Litman I, Neuhausser and Alfa Laval AB patents be excluded.

4. Paragraph 49. Whether Claim 1 of the '162 patent is invalid as rendered obvious by the Deutsch (I or II), Bauman, Grubb, Glad, Giegel, Litman I, Tom, Neuhausser and Alfa Laval AB patents and patent applications, the Glad article, and/or the remaining references listed in the attached Exhibit list, whether alone or in combination.

As discussed above, the recently disclosed prior art references of Litman I, Neuhausser and Alfa Laval AB patents should be excluded. The Bauman, Grubb, Glad, Giegel, and Tom patents are not cited as invalidating the patents-in-issue based on obviousness in the previous pretrial order, Syntron's previous Memorandum of Contentions of Fact and Law or the expert report as it relates to the '162 patent. However, they were listed as prior art references that may be used to invalidate the patents-in suit in Syntron's revised responses to interrogatories. (Abbott's Second Lodgment, Ex. 1 at 5.) Even though Syntron did not specify under which theory it would proceed to use the prior art references, Abbott had notice that Syntron might rely on these prior arts to demonstrate invalidity, whether it be based on anticipation or obviousness. Consequently, this Court recommends that these references not be excluded. Lastly, it appears that Deutsch (I or II) was mentioned in the expert report, (Abbott's Second Lodgment, Ex. 2 ¶ 83), and this Court recommends that it also not be excluded.

**\*13** 5. Paragraph 53. Whether Claims 22, 29 and 30 of the '162 patent are rendered obvious by Deutsch (I or II), Litman I, Giegel, Neuhausser and Alfa Laval AB patents and patent applications

and/or the remaining references listed in the attached Exhibit List, whether alone or in combination.

As discussed above, the recently disclosed prior art references of Litman I, Neuhausser and Alfa Laval AB patents should be excluded. In addition, as explained above, although the Giegel patent is not referenced as rendering obvious the patents-in-suit in the prior pretrial order, Syntron's previous Memorandum of Contentions of Fact and Law or the expert report, it was cited as prior art that might be used to invalidate the patents-in-issue. (Abbott's Second Lodgment, Ex. 1 at 5.) Therefore, the Giegel patent should not be excluded. Lastly, it appears that Deutsch (I or II) was mentioned in the expert report, (Abbott's Second Lodgment, Ex. 2 ¶ 83), and this Court recommends that it not be excluded.

6. Paragraph 55. Whether, to one of ordinary skill in the art, Claims 22, 29 and 30 of the '162 patent were rendered obvious by Litman I alone, or Litman I in view of Neuhausser and/or Alfa Laval AB patents and patent applications.

This paragraph contains the new prior art references which should have been disclosed during discovery. Therefore, in accordance with the reasoning set forth in Section A above, this Court recommends that the issue set forth in this paragraph be excluded.

7. Paragraph 56. Whether, to one of ordinary skill in the art, Claims 22, 29 and 30 of the '162 patent were rendered obvious by Giegel alone, or Giegel in view of Neuhausser and/or Alfa Laval AB patents and patent applications.

As discussed above, the recently disclosed prior art references of Neuhausser and Alfa Laval AB patents should be excluded. The Giegel prior art reference as stated in paragraph 56 is not in the previous pretrial order, Syntron's prior Memorandum of Contentions of Fact and Law, or in the expert report. However, Abbott had notice, during discovery, that it may be used to invalidate the patents-in-issue. (Abbott's Second Lodgment, Ex. 1 at 5.) Therefore, the Giegel patent should not be excluded.

C. Inequitable Conduct Defense (paragraphs 60, 62-65, & 66 of the Pretrial Order)

1. Paragraphs 60, 62 & 66

Abbott argues that Syntron raises for the first time certain inequitable conduct defenses as set forth in paragraphs 60, 62 and 66 of the pretrial order. It argues that the inequitable conduct issue was never

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 11
2001 WL 34082555 (S.D.Cal.)
(Cite as: 2001 WL 34082555 (S.D.Cal.))

raised in pleadings or discovery. Furthermore, it claims that the inequitable conduct claim was not based on Abbott's conduct but that of the "applicants." Abbott states that although it assisted in the prosecution of the patents, the inventors took primary responsibility in the prosecution. Lastly, Abbott contends that it will be prejudiced because this issue was not raised in expert reports.

In opposition, Syntron contends that it has been raising the "inequitable conduct" defense based on Abbott's conduct since the beginning of the lawsuit. Syntron further argues that its claim against the "applicant" is against Abbott because Abbott became the exclusive licensee of the patents in 1988 which gave Abbott significant control over prosecution of the applications. (Syntron's Lodgment, Ex. 12.) In further support, Syntron states that Abbott's in-house counsel, Gregory Steele, was added as attorney of record in the application for the '162 patent on January 3, 1995. (Syntron's Lodgment, Ex. 13.) Syntron also argues that expert reports are not needed to address this issue.

*14 Syntron raised the "inequitable conduct" issue when it filed its answer with counterclaims. Syntron's Sixth Affirmative Defense states "Abbott is estopped from asserting that Syntron has infringed the 484 patent or the 162 patent by reason of actions taken and statements made by the applicant to the Patent Office during prosecution of the application which led to the 484 and 162 patents." This statement is broad as it relates to Abbott's conduct. In the Seventh Affirmative Defense, Syntron alleges inequitable conduct by the "applicant." Therefore, inequitable conduct, in paragraphs 60, 62, and 66 with regards to both patents-in-issue, was alleged early in the litigation.

Inequitable conduct was also raised in interrogatories. In the revised response interrogatory no. 13, when Abbott asked Syntron to state the basis for its allegation that the patents-in-suit are "unenforceable or barred for any reason relating to the conduct of the inventors or the licensee." (Abbott's Second Lodgment, Ex. 1 at 13-15.) Syntron responded by reciting the Seventh Affirmative Defense which alleges inequitable conduct by the "applicant." (Id.) The response also included inequitable conduct based on concealing correct inventorship of the 484 patent from the patent office. (Id. at 14.)

On December 29, 1988, Abbott became the exclusive licensee to patents '220 and '459 that

eventually issued as the '484 and '162 patents. (Syntron's Lodgment, Ex. 12.) The '484 patent was issued on December 17, 1991 and the '162 patent was issued on August 5, 1997. As part of the license agreement, Abbott had the duty to prosecute any application related to the 220 and 459 patents which would include the 484 and 162 patents. (Id. at 73.) As Syntron points out, Gregory Steele was named attorney of record for the 162 patent application. (Id., Ex. 13.) Abbott states that it "assisted" in the prosecution of the patents. However, it appears that Abbott was significantly more involved in the prosecution of the patents-in-issue than mere "assistance."

The inequitable conduct issue was brought up in the pleadings and in interrogatories, contrary to what Abbott claims. The Court also notes that the inequitable conduct issue was raised in the prior pretrial order filed August 21, 2000. (Abbott's Lodgments, Ex. J at 74.) Abbott had notice of these issues since last year and at no time contacted the Court to re-open discovery on these issues. By virtue of the answer with affirmative defenses and reference to same in interrogatory answers, Abbott had notice and full opportunity to explore the issue during the scheduled discovery time. This Court finds that the inequitable conduct issue was raised in discovery and recommends that the issue not be excluded.

During oral argument, both counsel stated that no expert discovery was conducted on this issue. There is a dispute whether expert testimony is needed on this issue. At oral argument, Syntron stated that expert testimony would be helpful, but it would not be required, while Abbott asserted that expert testimony is needed. At no time did Syntron's expert, in reports or during deposition testimony, raise the issue. [FN8] The trial court will determine whether expert testimony should be presented on this issue. If the Court finds that expert testimony is required on this issue, this Court recommends that the issue be excluded based on prejudice against Abbott, or in the alternative, that the trial be continued and expert discovery re-opened.

> FN8. Dale H. Hoscheit, Esq. issued an "expert report" on March 22, 2000 and raised the inequitable conduct issue regarding prosecution of the patents-in-issue. (Abbott's Second Lodgment, Ex. 3.) There are significant issues whether attorneys may serve as experts on these issues.

Not Reported in F.Supp.2d                                                        Page 12
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

2. Paragraphs 63-65

**\*15** Abbott also argues that paragraph 63 is based upon the new prior art and should be excluded. In addition, Abbott asserts that since expert reports do not address the issues in paragraphs 63-65, it will be prejudiced. Syntron argues that expert reports are not needed to address this issue.

Paragraph 63 contains an inequitable conduct issue as it relates to the newly disclosed prior art. As discussed above, these new references should have been disclosed in discovery and this Court recommends that the issue set forth in paragraph 63 be excluded. However, since inequitable conduct was raised in pleadings and discovery, this Court recommends that the issues set forth in paragraphs 64 and 65 not be excluded. As noted above, both parties disagree whether expert reports are needed on these issues. Based upon the submitted documents, it appears that Syntron's expert, Dr. Gary S. David, did not raise these issues in his report or during his deposition testimony. The trial court will determine whether expert testimony should be presented on this issue. If the Court determines that expert reports will be required on paragraphs 64-65, this Court recommends that the paragraphs be excluded based on prejudice against Abbott, or in the alternative, that the trial be continued and expert discovery re-opened.

D. Inventorship (paragraph 69 of the Pretrial Order)

Abbott contends that Syntron failed to properly raise the inventorship issue as an affirmative defense, failed to disclose any evidence of alleged incorrect inventorship during discovery and failed to identify the allegedly correct inventors or facts supporting that contention. Abbott also argues that it will be prejudiced since there was no expert testimony about inventorship. In opposition, Syntron argues that it has continually preserved the inventorship issue in its pleadings and in discovery. Moreover, Syntron argues that Abbott has known about the inventorship issue for at least six years when it was brought up as a defense in another lawsuit. Also, Syntron learned about the inventorship issue through Abbott when Abbott produced a memorandum by Dr. Brian Lee about why he should have been named as a co-inventor during deposition in another lawsuit. (Syntron's Lodgment, Ex. 5.)

Under the Federal Rules, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief ..." Fed. Rule Civ. P. 8(a). The Rules do not require a "claimant to set out

in detail the facts upon which he bases his claim ... [this] is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Vivid Techs., Inc. v. American Science & Eng'g, Inc.,* 200 F.3d 795, 802 (Fed.Cir.1999) (*quoting Conley v. Gibson,* 355 U.S. 41, 47-48 (1957)). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.*

**\*16** Syntron filed an answer with counterclaim seeking declaratory judgment that the patents-in-suit are invalid and unenforceable. (Answer with Counterclaims at 7.) Although inventorship was not specifically pled, the counterclaim of invalidity encompasses the claim of inventorship. Syntron's counterclaim satisfied the "short and plain statement of the claim" of the Federal Rules.

In written interrogatories, the issue of inventorship of the '484 patent was explicitly brought up. (Abbott's Lodgments, Ex. 1 at 12-15). It also appears inventorship was brought up in Dr. Swanson's depositions and in the memorandum by Dr. Brian Lee. (Syntron Lodgments, Ex. 5 & 6.) Both parties stated that expert testimony was not conducted on this issue.

Although Abbott argues that expert testimony is required, it has presented no case law and this Court has not found any case law to support that proposition. In proving inventorship by clear and convincing evidence, the court must look to the evidence as a whole which includes the testimony of the alleged inventor and corroborative evidence that he presents. *See Marketel Int'l, Inc. v. Priceline.com,* 139 F.Supp.2d 1210, 1213 (N.D.Cal.2001); *Vivus, Inc. v. Kercso,* 977 F.Supp.1004, 1011 (N.D.Cal.1997).

The Court finds that the inventorship issue was disclosed during discovery and recommends that the issue not be excluded. Both parties dispute whether expert testimony is needed on inventorship. Syntron argues that it is not needed while Abbott contends that expert testimony is needed. It appears that Syntron's expert, Dr. Gary S. David, did not raise the issue in his report or during his deposition testimony. The trial court will determine whether expert testimony should be presented on this issue. If the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 13
2001 WL 34082555 (S.D.Cal.)
**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Court finds that expert testimony is required on this issue, this Court recommends that the issue be excluded based upon prejudice against Abbott, or in the alternative, that the trial be continued and expert discovery re-opened.

III. *Conclusion*

Based on the reasons set forth above, this Court recommends that Abbott's Motion to Exclude Evidence be GRANTED in part and DENIED in part. This Court makes the following recommendations:

1. Paragraphs 36-44. The recently disclosed nine prior art references in these paragraphs should be excluded.

2. Paragraph 45. The recently revealed prior art references of the Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article should be excluded. The Deutsch I, Grubb, Tom, Bauman, Giegel, Deutsch II, Brown and Kelton patents and the Glad article should not be excluded.

3. Paragraph 46. The recently revealed prior art references of the Weiss, Guire, Renn, Litman I, Neuhausser, Alfa Laval AB patents and the Takeda article should be excluded. The Deutsch I, Grubb, Tom, Bauman, Giegel, Deutsch II, Brown and Kelton patents and the Glad article should not be excluded.

4. Paragraphs 47, 48, 50, 51, 52 and 54. Except for the new prior art references of the Litman I, Neuhausser, Alfa Laval AB patents, which should be excluded, all the applications in these paragraphs should not be excluded.

**\*17** 5. Paragraph 49. The Deutsch (I or II), Bauman, Grubb, Glad, Giegel, and Tom patents should not be excluded and the Litman I, Neuhausser and Alfa Laval AB patents should be excluded.

6. Paragraph 53. The Deutsch (I or II) and Giegel patents should not be excluded and the Litman I, Neuhausser and Alfa Laval AB patents should be excluded.

7. Paragraph 55. The applications in this paragraph should be excluded.

8. Paragraph 56. The Giegel patent should not be excluded and the Neuhausser and Alfa Laval AB patents should be excluded.

9. Paragraphs 60, 62, and 66. The issue of inequitable conduct in these paragraphs should not be excluded.

10. Paragraph 63. The issue of inequitable conduct as it relates to the newly disclosed prior art references in this paragraph should be excluded.

11. Paragraphs 64-65. The issue of inequitable

conduct should not be excluded in these paragraphs.

12. Paragraph 69. The issue of inventorship in this paragraph should not be excluded.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before August 10, 2001. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed and served on or before August 17, 2001.

IT IS SO ORDERED.

2001 WL 34082555 (S.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 22769056 (Trial Motion, Memorandum and Affidavit) Syntron Bioresearch, Inc.'s Notice of Motion and Motion for Partial Summary Judgment of Invalidity of U.S. Patent Nos. 5,073,484 and 5,654,162 Under 35 U.S.C. § 102 (May. 08, 2003)

• 2003 WL 22769057 (Trial Motion, Memorandum and Affidavit) Syntron's Reply Memorandum of Points and Authorities in Further Support of its Motion for Partial Summary Judgment of Invalidity of U.S. Patent Nos. 5,073,484 and 5,654,162 Under 35 U.S.C. § 102 (May. 08, 2003)

• 2000 WL 34217824 (Trial Motion, Memorandum and Affidavit) Syntron's Reply Memorandum of Points and Authorities in Further Support of Its Motion for Partial Summary Judgment of Invalidity of U.S. Patent No. 5,654,162 Under 35 U.S.C. § 112, %57 1 (May. 09, 2000)

• 2000 WL 34217820 (Trial Motion, Memorandum and Affidavit) Syntron's Memorandum of Points and Authorities in Opposition to Abbott's Motion for Summary Judgment of Infringement (May. 08, 2000)

• 2000 WL 34217821 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Memorandum of Points and Authorities That the '162 Patent Is Valid Under 35 U.S.C. § 112, %57 1 (May. 08, 2000)

• 2000 WL 34217822 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Memorandum of Points and Authorities That the '484 and '162 Patent Are Valid Under 35 U.S.C. § 102 (May. 08, 2000)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 34082555 (S.D.Cal.)

**(Cite as: 2001 WL 34082555 (S.D.Cal.))**

Page 14

• <u>2000 WL 34217823</u> (Trial Motion, Memorandum and Affidavit) Declaration of Erik Paul Belt in Support of Abbott's Motion for Summary Judgment That Syntron Infringes the Patents-In-Suit (Mar. 22, 2000)

• <u>1999 WL 33732458</u> (Trial Motion, Memorandum and Affidavit) Abbott's Memorandum of Points and Authorities in Opposition to Syntron's Motion to Stay Discovery (May. 10, 1999)

• <u>1999 WL 33732457</u> (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Points and Authorities in Support of Motion to Stay Discovery (Apr. 20, 1999)

• <u>1999 WL 33732460</u> (Trial Pleading) Plaintiff and Counter-Defendant Abbott Laboratories' Reply to Defendant Syntron Bioresearch, Inc.'s Counter-Claim; Demand for Jury Trial (Mar. 17, 1999)

• <u>1999 WL 33732459</u> (Trial Pleading) Answer with Counterclaims (Feb. 22, 1999)

• <u>1998 WL 34181233</u> (Trial Pleading) Complaint for Patent Infringement in Violation of 35 U.S.C. Section 241(a) and Demand for Jury Trial (Dec. 30, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.