UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYTYC CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>TRIPATH IMAGING, INC.,<br><br>    Defendant. | Civil Action No. 03-11142 (DPW)<br>[Lead Case] |
| TRIPATH IMAGING, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CYTYC CORPORATION,<br><br>    Defendant. | Civil Action No. 03-12630 (DPW) |

**DECLARATION OF MICHAEL E. RAY IN SUPPORT OF
TRIPATH'S MOTION TO EXCLUDE DEFENSES BASED ON CYTYC'S CDS-1000**

I, Michael E. Ray, declare as follows:

1. I am an attorney of record for TriPath Imaging, Inc. in the above-referenced civil action. I make this declaration in support of TriPath's Motion to Exclude Defenses Based On Cytyc's CDS-1000. I have personal knowledge of the facts set forth below and, if called as a witness, I could competently testify thereto.

2. I am the TriPath attorney primarily in charge of TriPath's fact discovery efforts relating to technical issues such as patent infringement and defenses thereto such as patent validity and enforceability. I conducted on behalf of TriPath most of the fact depositions of

Cytyc witnesses involved in the design or development of the ThinPrep Imaging System and the predecessor system, the CDS-1000, including the depositions of David Zahniser, Kam Lin Wong, Louise Isenstein, Daniel Beinart and Peter Albany.

3. To the best of my knowledge, prior to the service of supplemental interrogatory responses on January 31, 2005, Cytyc never disclosed that it would rely upon the CDS-1000 as prior art to invalidate or to render unenforceable any of TriPath's patents. Moreover, I was not aware of, and I did not anticipate the assertion of, any such defense by Cytyc until I saw Cytyc's supplemental interrogatory responses in early February 2005.

4. Cytyc produced some documents concerning the CDS-1000 during the discovery process. These documents were not identified by production category. I assumed that these documents were produced because of their potential relevance to infringement issues because, in the words of Cytyc witness Dr. David Zahniser, "TIS [the system at issue here] was a system that had evolved from the CDS-1000." During depositions that I took of technical witnesses, I asked some background questions about the CDS-1000 in an effort to determine its potential relevance to infringement issues in this case. However, because I did not know at the time of these depositions that the CDS-1000 would be cited by Cytyc as prior art, I never asked any questions of any witnesses about aspects of the CDS-1000 that I would want to explore in detail had I known that the CDS-1000 was being cited as prior art.

5. If I had known during fact discovery in this case that Cytyc contended that the CDS-1000 (either the physical system or written descriptions of it) was prior art supporting Cytyc's patent invalidity or unenforceability defenses, I would have covered a number of additional topics with technical witnesses in depositions, including the depositions of Mr. Zahniser, Ms. Wong and Ms. Isenstein. Important topics that I would have covered had I known

2

of the CDS-1000 defense include: the detailed manner in which the CDS-1000 handled errors and tested the suitability of specimen slides for processing (features in the '327 Wilhelm patent); the software and when particular features were introduced; reduction to practice; published descriptions of the CDS-1000; and demonstrations of the CDS-1000 at trade shows or to researchers.

      6.    If I had known during fact discovery in this case that the CDS-1000 was a product that Cytyc would have cited as prior art to support a patent invalidity or unenforceability defense, there are a number of additional witnesses that I would have very seriously considered deposing in addition to witnesses that were in fact deposed. Because the CDS-1000 as prior art was not a subject of discovery in any of depositions that I took, I do not know who all of these potential witnesses are who might have to be questioned about that topic. However, I am aware that Cytyc's grant application for the CDS-1000 (Exhibit 5 to TriPath's Memorandum) lists at least five people as being involved in the project who were not deposed in this case (Martha Hutchinson, Gary Gill, Kathy Mui, Steven Meuse, and Norman Soule). In addition, Cytyc produced lab notebooks for almost a dozen people who worked on the CDS-1000. All of these witnesses would presumably have knowledge regarding the design, operation, marketing and/or display of the CDS-1000 which are relevant to Cytyc's current claim that the product is prior art.

      7.    If I had known during fact discovery in this case that the CDS-1000 was a product that Cytyc would have cited as prior art to support a patent invalidity or unenforceability defense, there are a number of other additional witnesses that I would have considered deposing as well. These include persons involved in trade shows at which I now understand that Cytyc contends that the CDS-1000 was publicly displayed.

8. On January 10, 2005, I received a letter from counsel for Cytyc, a true and correct copy of which is attached to TriPath's Memorandum as Exhibit 8. In this letter, Cytyc suggests that TriPath postpone its deposition of David Zahniser (then scheduled for January 12) because of some CDS-1000 software code that Cytyc planned to produce on either January 10 or 11. As reflected in the letter from Cytyc's counsel attached to TriPath's Memorandum as Exhibit 9, this software code was produced on January 11, 2005. I agreed to the delay suggested by Cytyc's counsel, and I instead took the deposition of Dr. Zahniser on January 28, 2005. At that deposition, I asked Dr. Zahniser some general questions about the CDS-1000 software code, given the content of the January 10 letter that I received from Cytyc's counsel. However, because I did not know at the time that this deposition was taken that the CDS-1000 was to be relied upon by Cytyc as an item of prior art, I did not ask any questions about possible characteristics of the CDS-1000 as prior art to any of TriPath's patents. Even if I had known about the prior art defense before Dr. Zahniser's deposition took place, I am uncertain whether I could have adequately covered the software code at his deposition from a prior art perspective, given that the printout of the software code for the CDS-1000 is an extremely lengthy and complex document that would require expert analysis to interpret.

9. Besides the software code described in Exhibit 9, there were a number of other documents concerning the CDS-1000 that Cytyc produced just immediately prior to the deposition of Dr. Zahniser. Some of these documents are described in letters from Cytyc's counsel's paralegal dated January 21 and 27, true and correct copies of which are attached as part of Exhibit 9 to TriPath's Memorandum.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 4th day of May, 2005 at Winston-Salem, North Carolina.

_____
MICHAEL E. RAY